LYDIA SHEFFIELD vs. JAMES R. SHEFFIELD — Appeal from Gonzales County.

The confessions of a party, when unsustained by collateral circumstances, are not competent proof of the fact of adultery.

By our statute, divorces are placed upon broader grounds than separations from bed and board are placed by the ecclesiastical law of England. A series of studied vexations, and deliberate insults and provocations, would be sufficient cause for divorce, without apprehension of personal violence or bodily hurt. They would constitute the intolerable treatment contemplated by the statute. [*Post*, 168.]

The opinions of witnesses are inadmissible as evidence. The jury must draw their own conclusions from the *facts* which are proved; and these facts, in cases of divorce, must be such as to produce the conviction that a continuance of the matrimonial relation between the parties would be insupportable.

The facts are stated in the opinion of the court.

VANDERLIP for appellant.

The verdict of the jury in this case should have been set aside and a new trial granted.

The policy of American law is generally in favor of the stability of the marriage union.

If the facts proved upon the trial of this cause in the court below are sufficient to authorize a divorce by any construction of the statute, it might almost lead to the destruction of the marriage institution within the state.

The facts proved in this cause do not show "excesses, cruel treatment or outrages of such a character as to render the living together of the parties insupportable."

To constitute such treatment in judgment of law, there must be a serious apprehension of bodily harm. All the authorities agree that mere ill-temper, want of civil attention, or even violent displays of passion, are not sufficient grounds for a divorce *a mensa et thoro*. [2 Kent, 125–6; 2 Mass. Rep. 150; 4 Mass. Rep. 587; 3 Mass. Rep. 321; 5 Johns. Ch. Rep. 187, 501.]

WEBB for appellee.

The petition alleges adultery in the wife; a series of unkind and undutiful conduct to the husband; and finally, abandonment.

The jury found the defendant " guilty of the excesses charged in the petition," and the court, upon that finding, decreed a divorce.

If the jury meant by the word " excesses," that the defendant was guilty of all the acts alleged against her, they were surely sufficient cause for a divorce; and we must presume they did so mean, as the term is apt when applied to either or all of them.

The only question then, is, did the evidence justify the verdict? There is certainly some discrepancy in the evidence, but that is not sufficient cause to set aside the verdict. It was the province of the jury to weigh the testimony. They may have seen enough in the conduct of some of the witnesses to destroy their credibility. This court has not the means of detecting departures from integrity which are possessed by the judge and jury who hear the witnesses testify; and it is for this reason that appellate courts have adopted the rule of not disturbing verdicts rendered upon conflicting testimony. " It is not enough that it is not clear that the verdict is right; *it must clearly appear that it is wrong*, to induce the court to set it aside." [Briscoe *vs.* Bronaugh, 1 Texas R. 326.] This principle is reasserted in Duggan *vs.* Cole and in other cases decided at the present term.

It is very generally laid down, that " where the court below refused to set aside the verdict upon the ground that it was against the evidence, the error must be *very flagrant* to induce a court of appeals to reverse the judgment." [2 Bibb, 313; 3 Little, 169, 189; 1 Bibb, 241; 4 Bibb, 195; 1 Monroe, 111, 262.]

Again, "a new trial ought not to be granted on the ground that the verdict is against evidence, unless it is *palpably* so." [1 J. J. Marsh. 6; 2 id. 310; 3 Marsh. 397; Hard. 629.]

The authorities referred to by the counsel for the appellant are inapplicable in this state, where the causes for divorce are regulated by statute. The legislature seems to have acted upon

the principle, that, when the conduct of either party is such as to destroy all hope of happiness in married life,.it is wiser and better for them to be separated. When the object of the union is defeated, it is not the policy of the law to keep the parties together in a perpetual state of disorder and misery. Mrs. Sheffield, in point of fact, may not have been guilty of adultery, but her admission that she had made an assignation to meet another man in the bottom, for the purpose of committing it (independent of her morose and surly temper), presented an insuperable bar to future harmony between herself and husband. It was the knell of destroying confidence and peace, which time had no power to soften or obliterate.

Chief Justice HEMPHILL delivered the opinion of the court.

The petition was filed by the appellee to obtain a divorce from his wife, Lydia Sheffield, the appellant. The petitioner states, in substance, that he had always treated his wife with tenderness and affection; that for the last six or eight months she was in the habit of addressing him, almost invariably, in an angry, insulting and aggravating manner; that on the second or third of May, 1848 (which was about five or six days before the filing of the petition), she voluntarily abandoned the house and home of the petitioner, without any cause or provocation; that on the fifth she returned, and on the sixth left with her clothing, refusing any longer to live with the petitioner, although he has solicited her to that effect; and that owing to this cruel treatment, and these outrages, their living together is insupportable, etc. In an amended petition he charges the appellant with adultery, committed since their inter-marriage, etc.

The answer is a simple denial of all and singular the charges in the original or amended petition contained.

The original petition states the marriage was celebrated sometime in the year 1846; though in the amendment it is fixed on the 21st of January, 1847.

One witness states that the defendant was sometimes sour and sulky towards plaintiff; and that defendant at one time acknowledged to him that she had, during her marriage with

plaintiff, made an assignation with a man, who was not her husband, to meet him in the river bottom, for the purpose of an "improper intercourse, cohabitation and adultery." He also testified that she sustained a fair character in the community; and that he never knew of any other unkind treatment to her husband than a few short words, and occasionally sulkiness.

Another witness testified that the appellant's behavior to her husband was frequently irritating, unkind and unbecoming, in his opinion; that on one occasion she refused to visit the house of a neighbor with him, and afterwards went alone to the house; that she frequently went on visits to her neighbors, and stayed all night; that on another occasion he saw the plaintiff mending his own coat; that she was occasionally sulky; that the circumstances stated were all the acts of cruelty, or excesses, he had witnessed; and that a great portion of the time the witness lived with the plaintiff, which was shortly after the marriage, the plaintiff and wife appeared to live agreeable and happy.

Another witness stated that he had never witnessed any acts of cruelty or unkindness on the part of the defendant to her husband; nor had ever heard, believed or knew that defendant had ever committed adultery, or had ever agreed to do so; that the character of the defendant in the community was always regarded as irreproachable; and the witness believed, that, if there was a virtuous woman in the world, she was one.

The defendant proved by a witness the acknowledgment of the plaintiff that he had driven the defendant from his house; that she was afterwards received in the family of the witness; that he regarded her as a woman of good character, and an industrious and neat woman.

The jury found "the defendant guilty of the excesses as charged in the petition;" and thereupon a divorce was decreed, and the community property ordered to be distributed, in equal moieties, between the complainant and the defendant.

A motion for a new trial, on the ground of newly discovered evidence, was overruled and an appeal taken.

There are no bills of exceptions sent up with the record, and we are not informed of the instructions of the court to the jury.

The only question is, whether the verdict of the jury is supported by the evidence.

The charge of adultery, alleged in the amended petition, is altogether unsupported by evidence. The proof shows the character of the appellant to be irreproachable, one of the witnesses using the very striking expression, that, if there be a virtuous woman in the world, she was one. The only shadow of evidence reflecting on the purity and virtue of the appellant is the statement by the witness of her acknowledgment that she had made' an assignation with a stranger, since her marriage, for the purpose of illicit and adulterous cohabitation. All the other evidence on the subject of character renders this statement exceedingly improbable. This witness himself testifies that she sustained a fair character in the community, and, in fact, the evidence was altogether inadmissible to prove the allegations of the plaintiff, and should not have been permitted to go to the jury. The confessions of the party, when unsustained by collateral circumstances, are not competent proof of the fact of adultery, and certainly not of adulterous intention, as was attempted in this case.

Presumptions of guilt must be raised from other circumstances, such as gross indecorums, improper familiarities, opportunities of privacy sought and indulged in, etc., etc., before such confessions are admissible under the general rules of evidence controlling such investigations; and then, taken with these presumptions, they may together form substantial proof of the charge. 2 Hagg. 229; Paynter on Marriage and Divorce, p. 197; 16 L. Reports, p. 24.

But it is doubtful whether, under our statute, the admissions of a party can be received as proof, even in connection with collateral evidence, as the decree is to be rendered " upon full and satisfactory evidence, independent of the confession or admission of either party."

The imputation, then, falls unhonored to the ground; and I

cannot forbear the observation that there is more cruelty in this blighted charge, unsustained as it was by proof, than in all the sulkiness and short words proved against the appellant.

Angry words, according to the homely adage, break no bones; but the wounds inflicted by calumny on the delicate texture of female reputation may be closed, but are scarcely healed, by the lapse of time.

The jury, in their general finding of the excesses charged in the plaintiff's position, did not, it is presumed, intend to include the charge of adultery. There is no evidence in its support, and there is, in fact, scarcely more than a scintilla of proof to sustain the other charges alleged in the petition.

The circumstances of the abandonment are unexplained, so far as the acknowledgment of the husband may be admissible for that purpose, and that shows that the wife was driven from the premises. There is no proof to the contrary, and no blame can attach to the defendant on this ground; and if she had erred, there was no *locus penitentiæ* allowed her, as the suit was commenced on the second day after her leaving the house. And had the abandonment been voluntary, it must have continued three years before it would form any ground for the dissolution of the bonds of matrimony.

The only charge upon which there is a tittle of evidence is that of the insulting and aggravating language and manner of the defendant. The statute declares that "a divorce from the bonds of matrimony may be obtained where either the husband or wife is guilty of excesses, cruel treatment or outrages towards the other, if such ill treatment is of such a nature as to render their being together insupportable." [Laws of 1841, p. 20.] The appellant contends that, to constitute such ill treatment in judgment of law, there must be serious apprehensions of bodily harm; and refers to 2 Kent, 125, and to cases in the Massachusetts reports. The authorities cited are not altogether applicable to cases under the statute, as with us divorces are placed on broader grounds than are separations from bed and board placed by the ecclesiastical law of England or the statutes of Massachusetts.

By the ecclesiastical law, *sævetia*, or cruelty, is a cause of divorce *a mensa et thoro;* and extreme cruelty by either party, under the laws of Massachusetts, is just cause for the same species of divorce. In applying the law, it was found very difficult to define in clear terms what constituted cruelty in a legal sense. The cause, it was stated, should be grave and weighty, and such as showed an absolute impossibility that the duties of married life could be discharged. Proof must be given of a reasonable apprehension of bodily hurt. Mere austerity of temper, petulance of manners, rudeness of language, a want of civil attention, even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty against which the law can relieve. [Shelford on Divorce, p. 240; Evans *vs.* Evans, 1 Hagg. Rep. 38, 39; 2 Kent, 155.]

The statutory provision of Texas covers more ground than is embraced under the legal definition of the term cruelty, as the ill treatment of one party towards the other may be of such a nature as (without resort to personal violence) to render future cohabitation insupportable.

But if it be difficult to determine what, in legal contemplation, constitutes cruelty under the ecclesiastical law, it is still more arduous to define in comprehensive terms what acts, or the effects of what acts, shall, in law, be regarded as such ill treatment as would render the matrimonial union intolerable. And in attempting to ascertain what, in legal intendment, is the character of an act charged or proved, the act itself should not alone be considered, or what would be its effect in any other situation or relation in life, but whether it be such as constitutes, notwithstanding all the advantages derivable from the inviolability of the marriage contract, such ill treatment as should, in law, be sufficient to dissolve the connection.

The nature, object and important purposes of the contract should have their just influence upon the mind. The parties have pledged themselves, not only for their own happiness, but for purposes important to society, to live together during the term of their natural lives. This engagement is the most solemn and important of human transactions. It is regarded by

all Christian nations as the basis of civilized society, of sound morals, and of the domestic affections; and the relations, duties, obligations and consequences flowing from the contract are so important to the peace and welfare of society, as to have placed it under the control of special municipal regulations, independent of the will of the parties. The mutual comfort and happiness of the parties are the principal, but not the only, objects of the engagement. It is intended also for the benefit of their common offspring, and is an important element in the moral order, security and tranquility of civilized society. The parties cannot dissolve the contract, as they can others, by mutual consent, and no light or trivial causes should be suffered to effect its recision. While full effect is to be given to the statute, it should be remembered that, according to the experience of the most enlightened nations, the happiness of married life greatly depends on its indissolubility, and that the prospect of easy separation foments the most frivolous quarrels and disgusts into deadly animosities. Parties may not be able to live together very harmoniously, but they cannot be separated except for reasons approved of by the law. And when they know they must live together, except for causes prescribed by the law, they learn, in the language of Lord Stowell, "to soften, by mutual accommodation, the yoke which they know they cannot shake off; they become good husbands and wives from the necessity of remaining good husbands and wives; for necessity is a powerful master in teaching the duties it imposes." Such construction ought to be given the statute, and such weight allowed the acts of the parties, as would effect the legislative intention; but there should not be such looseness of exposition as would defeat the beneficial objects of the marriage institution, and sunder its bonds with almost as much facility as if it were a state of concubinage, dependent alone on the will of the parties.

Let us now examine whether this most solemn and important engagement should be dissolved on such facts as are proven in this case. It cannot be doubted that a series of studied vexations and deliberate insults and provocations would, under our statute, be sufficient cause for divorce, without apprehension

of personal violence or bodily hurt.  This would constitute the intolerable treatment contemplated by the statute.  But whether such is its character, in a legal sense, must depend on the facts proven at the trial, and not on the opinions of witnesses.  The jury, on competent proof, must draw their own conclusions, irrespective of the opinions of witnesses, which are inadmissible as evidence.  [9 La. Rep. 420, 450; 10 La. Rep. 250.]  The petitioner alleges that his wife has been undutiful to him; and for six or eight months past had addressed him, almost invariably, in an angry, insulting and aggravating manner.  Now, to sustain these allegations, he has proven by one witness a few short words and occasional sulkiness on the part of the wife; and the opinion of another witness (which is of no consequence unless founded on facts stated) was, that the conduct of the defendant was frequently insulting, unkind and unbecoming a wife towards her husband.  All the acts of cruelty or excesses that he had witnessed were that, on one occasion, she refused to visit a neighbor's house with her husband and went alone the next day; that she frequently went alone on visits to her neighbors, and stayed all night; and that on one occasion he found the husband mending his own coat, during the absence of his wife; and that the wife was occasionally sulky.  Now, although there is evidence of petulance, occasional sulkiness and something of a gadding disposition, yet the supposition that these are just causes for a divorce is preposterous.  Half the marriages in the country might be dissolved if occasional freaks of temper, or even the direful necessity of a husband's mending his own coat for once in his life, were in legal contemplation such ill treatment as would thoroughly embitter the fountains of matrimonial felicity, and render its waters a nauseous and insupportable draught.  Upon what train of reasoning the jury considered these facts a just cause of divorce, or as proof of the facts alleged, I am at a loss to determine.

Were it the practice to grant non-suits *in invitum*, this would have been a most proper case for the exercise of the power.  The jury may have perhaps labored under the erro-

neous, but somewhat prevalent impression, that persons who do not live very agreeably together, and who, in point of fact, are separated, should in law be divorced. Whatever opinions they may entertain as private persons, they are not, in their official capacity as jurors, to inquire whether the happiness of the parties might not be promoted by separation, or whether there has been a want of that tenderness and affection which should characterize the matrimonial relation; but whether the acts proved are such as to destroy the happiness of married life, and render its further continuance insupportable.

The acts proved are of quite a trivial nature, and totally insufficient to sustain a decree of divorce.

The authorities referred to by the counsel of appellee, on the subject of new trials, are not questioned; but we are of opinion that in this case the verdict is flagrantly wrong, and should, therefore, be set aside. And it is ordered, adjudged and decreed that the judgment be reversed, and the cause remanded for a new trial.