Hemphill, Ch. J.
Fourteen causes of error have been assigned, some of which will be examined, hut not in the order of their arrangement.
The fifth ground assigned is that the court erred in overruling the demurrer of tiie defendant.
The question presented is whether there is any fact well pleaded in the, petition which'would be sufficient in law to dissolve (die bonds of matrimony?
There- were some suggestions in the argument reiaiive to the extent of the power of the courts over matrimonial causes, which will not, in this case, require any particular examination. The statute defines tiie grounds of divorce; and whatever diversity of opinion may be entertained-as to tiie authority of a District Court to annul a marriage for causes arising antecedent to its celebration other than tiiat of incurable impotency, which is expressed in (lie statute, it will be conceded that for causes subsequently arising the power of the court is restricted to tiie grounds prescribed in the statute.
With lilis view of our authority we will proceed to examine' tiie legal sufii-ciehcy of the petition. The intermarriage of tiie plaintiff and defendant ami its continuance to the present time are alleged. These are essential preliminary averments, and their proof at the triafis indispensable. Without a valid marriage there can be no violation of its rights or obligations. There can bo no cruelly between man and wife unless they legally occupy that relation to each other. (Shelford, 368, 464; Paynter, 187; 4 Eccl. R., 549.)
It cannot be seriously contended that tiie facts alleged in the petition would not, if proved, constitute good grounds of divorce.
The narrative, it is true, is highly inflamed, and there are vague allegations in relation to continuous cruelties and outrages, without specifications pointing or at least approximating to the time, place, and circumstances of their occurrence, and also in relation to general bad character, which in a legal sense are iinperrinenl, and furnish no foundation for proof. But specific outrages are averred. The plaintiff is charged with cruel neglect and refusal of medical aid in a violent attack of illness, and with causing- by his conduct the physician whom she had called in to see her to leave the house and return no more, to .the great danger of the life of tiie petitioner.
The charge of poisoning the minds of her children and changing their natural feelings of love and affection into hatred and contempt, often breaking out into open abuse and violence, are much too vague to form any ground for the admission of evidence or action of the court. Allegations which cannot be proved by admissible evidence encumber the record, aiid should bo stricken out on special exception. (Slielford, 401, 509.)
Cut without further comment on other charges of the petition, the *9 allegation that the defendant was guilty of tlie cold-blooded and brutal murder of the plaintiff’s son would be sufficient to sustain the action.
The matrimonial connection, although it may have originally been founded in love, and cemented by tlie most tender and delicate friendship and afreet ion, would, by this shocking crime of tlie husband, be instantly converted into a yoke of unmitigated misery and wretchedness.
The love of the mother for her offspring is among the strongest of her affections, and was implanted by nature in her heart for tlie most wise and salutary purposes; and cruelties towards her children create as much distress anil awaken as deep an anguish as outrages inflicted upon herself. The. hnsbaml as the head of tlie family, is invested' witii all tlie powers necessary to iLs proper control. lie stands in some degree in loco parentis, and must, of necessity, exercise authority as such. But lie has no legal right or power to treat, ti) > chi' Iren of ills wife by a former-or even the existing marriage with barbarous iuiiumanity aud cruelty; much less can he in the malignity of his wickedness deprive them of life.
The mother, if her child bo attacked, is (in its necessary defense) perfectly justifiable in taking away the life of the assailant. She may treat an assault upon her child as an attack upon herself; aud the murder of her offspring mist consequently be one of the most enormous outrages that could be perpetrated against the mother.
The statute declares that tlie marriage, may be dissolved if the husband or wife be, guilty of such excesses, cruel treatment, or outrages towards tlie other as to render (heir living together insupportable. To constitute an excess, cruelty, or outrage within the meaning of (lie statute, it is not necessary that an indignity or that violence he offered to tlie person of tlie wife. If the act be an outrage upon her feelings, it is immaterial whether it be inflicted immediately upon herself or upon third persons, so that, it be inconsistent with tlie matrimonial relation and its duties, obligations, and affections. In Popkin v. Popkin, (3 Eecl. R., 323,) it is said that an attempt by a husband to debauch women servants is a strong act of cruelty, not. perhaps alone sufficient to divorce, hut which might weigh, in conjunction with others, as an act of considerable indignity and outrage to the wife’s feelings.
If the mere attempt of a husband to debauch a nursery maid be cruelty to the wife as affecting her mental feelings, can the murder of her sou he regarded as less than a shocking outrage? Can she look witii composure upon'a husband dripping with tlie blood of her offspring, and yet suffer agony from liis attempts upon the virtue of her servants? The supposition is preposterous. Tlie assassination of a child is cruelty to tlie mother in its most aggravated horrors.
It must be acknowledged that there is extreme difficulty in defining or describing legal cruelly. In Evans v. Evans. (4 Eccl. R., 310.) the task of laying down á direct definition was declined. It was said that the causes must be most grave and weighty, and stieii as show an absolute impossibility that the duties of life can be discharged, for the duties of self-preservation must take place before the duties of marriage. Wliat merely wounds the mental feelings is in few eases to be admitted where they are not accompanied with bodily injury, actual or menaced. In Westmeath v. Westmeath. (4 Eccl. R., 263,) it is said that an apprehension of danger to life, limb, or health is the ordinary criterion of legal cruelty. (See Harris v. Harris, 1 Eccl. R., 203; Waring v. Waring, 1 Eccl. R., 211; 3 Eccl. R., 331.)
But in Durant v. Durant, (3 Eccl. R., 327.) a charge by the husband against tlie wife of criminality with her children’s tutor was treated as a gross cruelty, in comparison with which an act of personal violence would have been trivial and pardonable. And in Bray v. Bray, (3 Eccl. R., 70,) an accusation by a husband against his wife of an incestuous connection with her uncle, was held to be a cruelly than which none could be considered more grievous, except, perhaps, great personal violence.
*10 •From these cases it« appears that words ami acts which affect Ihe menta feelings enter into the. definition of legal cruelty, ami I hat acts endangering' or menacing life, limb, and health, are not its only ingredients.
Tlie commission of a felony or capital crime is not of itself under the stature a cause of divorce. But tiic murder of a child of one of Ihe conjugal partners by the other is sufficient; not because of the offense against society, but for the outrage upon the feelings of the. parem and consort in matrimony.
The facts alleged in (he pleadings, independent of the irrelevant matter, which may he treated as surplusage., are sufficient in law to entitle the plain-till' to a divorce; and there was no error in overruling the demurrer of l he defendant.
Nor was there error in permitting at the trial tlie marriage, to be. proved by common repute, and by the cohabitation of the parties. Tlie marriage was fully established by such evidence, and tlie fact of its celebration was further proved by the witness Do Leon, who testified that he acted as Padrino, and brought the parties to the altar, when' they were, married and received the sacrament of marriage in the chapel in Victoria. This evidence was sufficient to establish the marriage in fact; but this is not essential in suits for divorce. Proof of general reputation, cohabitation of parties, and general reception as man and wife'is competent evidence of marriage in suits of that character.
FTor was Lhere any error in rejecting or disregarding evidence of the subsistence of a former marriage between the plaintiff and the father of her son, Peter X. Ilays. The fact of a previous marriage had not been pleaded by the defendant, and there was no averment in his answer under which any such testimony was admissible.
The rules in relation to the certainty of pleading in matrimonial as well as othercaseshavebe.cn too frequently discussed and determined by this court to require further observation. Tlie pleadings must slate lliefacts'upoii which the [SO] plaintiff founds his demand for relief, and the defendant his ground of defense. No more substantial ground could be urged by (lie defendant than the fact of a prior marriage; and if intended lo be proved it should have been epecilically averred. (Wright v. Wright, 3 Tex. R.; Guess v. Lubbock, and Wells v. Fairbank, 5 Tex. R.)
The third ground — that the court erred in admitting to record the writing purporting to be a statement of facts — will require but a brief comment. 'Tlie judge certifies it to be a true statement of all the material facts proved at tlie trial of tlie canse. The fifteenth rule for the government of District Courts, adopted April, 18-17, requires tlie statement to contain all tlie essential facts introduced in evidence, collected from tlie depor-il ions used and the oral testimony of witnesses. Tlie certificate proves that the judge lias complied with the rule. Unimportant and irrelevant matter, stated by ignorant witnesses, having no influence on the decision of the cause, should not encumber tlie statement prepared for tlie revising court. The statement of tlie judge is formed from those furnished by the parlies respectively and from his own knowledge; and it is not to be presumed that any of the material facts would be omitted. But should that, in the opinion of either party, be Ihe ease, they would doubtless, on motion or suggestion, be inserted, although deemed by the judge immaterial. 'Títere is no evidence on tlie record that áiiy such suggestion or objection was made.
The second ground of error is tlie refusal of the judge to instruct or charge the jury as requested in the first and seventh charges asked by the defendant’s counsel at the trial.
The latter instruction only requires any notice; and that, in substance is, that the returning homo of petitioner Sit tfio solicitation of tlie defendant., and tlie re cohabiting with him, for ten or twenty days, or did so afler agreeing to tlie terms'of a compromise, site cannot be heard now to complain of injuries which existed before that time.
The refusal of the judge was placed on tlie ground that the charge was *11 not true; and the refusal was proper if, in liis opinion, the instruction was inapplicable to the facts adduced in evidence. But admitting that the facts were correctly stated, yet the proposition is not sustained by law.
In the 12th section of the act concerning divorce and alimony, it is declared that in a suit for divorce on the ground of adultery, if the complainant shall have admitted the defendant into conjugal society or embrace afler he or she knew the criminal fact, it shall be a good defense and perpetual bar against said suit. This is on the principle that the aggrieved party has forgiven the offense, and can never after complain. But tlii's effect of reconciliation has not been expressly extended to other causes of divorce than that of adultery; and it might be contended that the express declaration that one cause of divorce shall be barred by renewed conjugal embraces necessarily excludes other causes from the operation of the rule, on the familiar maxim of construction that expressio unius exelusio alterius est.
However that may be, it is clear that the effect of renewed matrimonial cohabitation on causes of divorce arising from cruelty or outrages has not been prescribed by statute,, and we may with propriety recur to the doctrines of the canon law as received in the ecclesiastical courts of England on the subject.
Reconciliation in that law is technically termed condonation, and it does not constitute, under all circumstances, a perpetual bar against complaint for antecedent offenses. Condonation is defined to be a conditional forgiveness that does not take away the right of complaint in case of continuation of the injury, which operates as a reviver of former wrongs. By the ecclesiastical law, fresh acts of adultery or fresh acts of cruelty will revive former acts of adultery or cruelty. In Westmeath v. Westmeath (4 Eccl. R., 200) it is said that “the force of condonation varies according to circumstances. The condonation by a husband of a wife’s adultery — still more repeated reconciliations after repeated adulteries — creates a bar of far greater effect than does a con-donation by a wife of repeated acts of cruelty committed by a husband. In the former case the husband shows himself not sufficiently sensible to his own dishonor and to his wife’s contamination, and reconciliations often repeated amount almost to a license to her future adultery, so as to form nearly an insuperable and immovable, bar; but the forbearance of the wife, and her repeated forgiveness of personal injury in hopes of softening the heart and temper of her husband, and under the feelings of a mother anxious to continue in the care and nurture of her children, are even praiseworthy, and create but a slight bar, removed by the reasonable apprehension of further violence.” (See also 3 Eccl. R., 390; Shelford, 436, 445.)
Condonation is held to he less strjmgent on the wife than on the husband. She is more subpotestate, more inops consillii. She may entertain more hopes of the recovery and reform of her husband, &c. (Shelford, 447; vide Ferrers v. Ferrers, 3 Eccl. R., 334.)
Were the facts truly stated in the instruction asked, yet the plaintiff would not be barred of complaint against injuries existing before the reconciliation unless there was no subsequent ill treatment by the husband or no “reasonable apprehension of future violence.”
The proposition then that condonation forms a conclusive and perpetual bar against prior cruelties and outrages is against Jaw; and there would have been no error had tlie refusal of the judge been placed on that ground.'
I do not deem it necessary to examine in detail whether the facts as presented in the instruction were sustained by the evidence or not. There was no proof of conjugal intercourse between the parties. Their living in the same house raises a presumption of matrimonial cohabitation, but lilis may be repelled by circumstances. In this ease a witness testifies that they had not slept together for years, and this raises a counter presumption that during tliis temporary reconciliation they were not occupants of the same bed. *12 A return to live in the same house with a husband, but without connubial cohabitation, does not operate so complete a forgiveness as where there was a renewal of the conjugal society or embraces.' (3 Eccl. R., 342; 4 Id., 2005 Shelford, 251.)
The only further ground of error which will be examined relates to the verdict of the jury.
The objection that the verdict is contrary to the evidence should, to he available, have been made the ground of a motion for a new trial below. And this not having been done it cannot now be considered.
The first branch of the verdict is that the plaintiff has well-grounded belief that the defendant is the murderer of Peter 3ST. Ilays, her son; and, among other matters, it is urged that this finding' was against the instructions of (he court. The charge to the jury is not embodied in the record, and we cannot determine whether the verdict was inconsistent with the instructions, taken and considered together, or not. It is true that the verdict is not easily reconcilable with the instrueiion asked by the defendant and refused by the court, on the ground that it. had been previously given in substance to the effect that the fact of the defendant having killed the soil of tlie plaintiff formed 110 ground for divorce. But the instruction in itself was erroneous, and the verdict is not assailable on the ground that it was disregarded.
There are several anomalies in the proceedings in this cause, and one of the most singular is the exclusion bjr the court of evidence to prove that the defendant was the murderer of. Peter 1ST. Hays, and yet permitting testimony to he given of the belief of the- plaintiff and of the community that such was the fact. From the course of the testimony it seems to have been almost accidental that the actual death of Peter 1ST. Hays was proved at all.
To have admitted evidence that the defendant was guilty of any felonious acts, except such as under (he statute were outrages against the wife, would liave been improper ; and the error arose doubtless from not discriminating between felonies which are merely offenses against society and such as are also wrongs against the wife. A fact in itself criminal maybe pleaded and proved when it becomes a necessary fact to the evidence in a civil suit. (4 Eccl. R., 357.) The belief of the plaintiff in the criminality of the defendant must have his actual guilt for its basis. This she attempted to establish by direct and competent evidence, and it was not her fault that she was compelled to resort to the general belief of the community. But as this evidence was not objected to below, it cannot now be impugned.
The finding of the jury is certainly not free, when critically examined, from objection. They are required to pass on the material facts alleged in ttie petition.
This they can do by finding for the plaintiff generally if the facts are proved to their satisfaction; but if they attempt to find specially, it should he on issues made up under direction of the court, or the verdict should be drawn by some intelligent lawyer, who can understand what issues are formed by the pleadings, can separate one fact from another, and distinguish between facts established by the evidence and conclusions of law from those facts.
That the defendant had perpetrated an atrocious crime against society and an outrage upon his wife, and her belief in the fact having been established on the only evidence which was permitted to be introduced, and which was not objected to by the defendant, the jury expressed their finding of these facts, not separately and distinctly, as should have been the ease, but conjointly; for the only rational construction of their language is that the defendant was guilty of the alleged murder, and that this was the, belief of the plaintiff; and these facts being thus found by the jury, the verdict is sufficient to warrant a judgment for a divorce.
The second branch of the verdict is that the plaintiff was in continual fear of violence from the defendant.
, The plaintiff alleged in the petition her apprehensions that if she lived *13 longer under the control of the defendant she would suffer personal violence, and that her life would be endangered. To render life insupportable is by law made the criterion of cruelty; and, in the language of Lord Stowell, wliat can have that effect more than continual terror and ihe constant -apprehension of bodily injury? (3 Eccl. R., 331.)
Note I.—Sharman v. Sharman, 18 T., 521.
Note 2.—And proof is necessary, although the marriage is expressly admitted by the answer. (Simons v. Simons, 13 T., 468.)
Note 3.—Nogees v. Nogees, 7 T., 538; Pinkard v. Pinkard, 14 T., 356; Shreck v. Shreck, 32 T., 578.
Note 4.—Sharman v. Sharman, 18 T., 521. Under the act of Slay, 1876, Laws 16 Legislature, p. 16, imprisonment in the State prison on conviction of felony is a ground for divorce.
That she lived in such apprehension was abundantly proved by evidence not objected to, and these fears were justified by the murder of her son and his treatment of her in sickness.
The facts upon which these fears were based should have been proved and found by the jury.. Put even if the latter part of the verdict be rejected, the facts first found are sufficient to warrant the judgment, and it is ordered to be affirmed.
Judgment affirmed.