## MARY TAYLOR v. CHARLES L. TAYLOR.

See this case for circumstances which were held to amount to such outrage or cruel treatment, as to entitle the wife to a divorce.

Error from Montgomery.　　Tried below before the Hon. Peter W. Gray.

Petition filed March 7th, 1856, as follows : Your petitioner, Mary Taylor, of the county and State first aforesaid, humbly complaining of Charles L. Taylor, of the county of Montgomery and State of Texas, would represent unto your

honor, that she and the said Charles L. Taylor intermarried in the county of Montgomery on the 20th of August, 1855 ; that they lived together as husband and wife but a few weeks, until the said Charles became indifferent and unkind towards petitioner ; frequently using language to injure and wound the feelings of your petitioner, which unkindness gradually increased to direct insults and outrageous conduct, both in words and actions, telling your petitioner that he did not love her, and insisting on her leaving his father's house, where we then lived together, and insisted on petitioner leaving ; that he did not intend living with her. With all of this she continued to be to him a kind and affectionate wife, hoping to regain the affections of said Charles, but without effect. He still continued his cruel treatment and outrageous conduct towards your petitioner, daily increasing his excesses ; and sometime about the last of October, or first of November, 1855, the defendant struck your petitioner a blow in the face, after which outrageous conduct he abandoned his father's house and left petitioner, since which time she has not seen him ; which treatment is of such a nature as to render our living together any longer insupportable. Therefore your petitioner prays, &c.

No answer filed. The testimony was as follows : Deposition of Elizabeth Taylor : I am acquainted with the parties to this suit ; they were married in August, 1855 ; they lived in our house, with myself and family ; his treatment was cool towards her ; his conduct was not that of a kind and affectionate husband ; he did not treat her like he loved her ; his treatment towards her was not such as should be by a husband to a wife ; he was frequently unkind to her ; this course of conduct commenced a short time after they were married, and continued up to the time he left her. Interrogatory : Were you present at any time when the defendant used any violence on the person of the plaintiff ? What violence did he use, and at what time ? Ans. I was present ; I saw him throw his hat in her face ; I do not recollect the time, but it was a short time

before he left. Int. Was it not a frequent occurrence that the conduct of the defendant was such as to cause the plaintiff to weep? What peace of mind could she have, living in her condition? Ans. It was; I don't think that she could have any. Int. What did the defendant do soon after he struck his wife in the face? Ans. He left the house, and soon afterwards left the place. Int. Did he return at any time while the plaintiff was there? When did she leave the house? Ans. He did not at any time; I think it was about the first of February that she left. Int. What was the conduct of the defendant generally, from the time of the marriage up to the time he left? Ans. His conduct was generally cool and unkind to her. Int. From your knowledge of his conduct towards the plaintiff, could she live with him in any degree of peace and happiness? Ans. No, she could not, I don't think. Int. Was not his conduct of an outrageous character towards the plaintiff? Ans. His conduct was. Int. Was the blow struck the plaintiff by the defendant provoked by the conduct of the plaintiff? and what was her general conduct towards him. Ans. I think it was not; her general conduct was pleasant towards him.

Wm. Taylor testified that the defendant left the plaintiff in October or November, 1855, and left her destitute of any means of support, and without any home, except at the house of witness, who is defendant's father; that the conduct of the defendant was not calculated to make any woman happy; that he thought from the conduct of the defendant, that it was not possible for them to live together again; that he was satisfied or convinced from the conduct of the defendant, that he would never live with the plaintiff again.

E. C. Dealy testified that the plaintiff had been delicately raised, accustomed to kind and tender treatment, and that she now has no means of support, except through the kindness of friends.

Daniel Dealy testified that the plaintiff had no home; that

some months elapsed after the defendant left her before she had any home ; that she staid some of the time at the house of the defendant's father, and some of the time at other places where she could ; that when he learned her destitute and un. pleasant situation, he gave her a home at his house where she then resided, he (witness) being her father.

W. R. Garrett testified that soon after the defendant abandoned the plaintiff he (witness) talked with the defendant with a view to reconcile him to the plaintiff and induce him to return to his home and his duty ; that the defendant replied that he had no idea of ever living with the plaintiff again ; that he had no affection for her, and never had ; that he (witness) afterwards made another effort to have the defendant return to his wife, but without success. Defendant replied, with much determination, that he never would live with his wife again.

The jury found that the allegations of the petition were true ; but the Court below rendered judgment against the plaintiff, notwithstanding the verdict ; and plaintiff prosecuted this writ of error.

*H. N. & M. M. Potter*, for plaintiff in error.

HEMPHILL, CH. J. We have the highest respect for the opinion of the Judge who presided in this cause, and his judgment as to the sufficiency of the facts in divorce cases is entitled to great consideration. But in this case there is room for difference of opinion as to the force and effect of the facts, and with some hesitation we feel constrained to adopt a conclusion at variance with that of the Court below.

At the first trial, the jury found on issues made up by the Court. It is not necessary to recapitulate these issues, nor to make any observation in relation to them, except that the general effect of the finding by the jury was in support of the allegations of the plaintiff. A new trial was ordered, and the jury found that the leading facts as set forth in the petition of the plaintiff were fully sustained.

Vol. XVIII    37

From the evidence it appears that the plaintiff had been delicately raised, and accustomed to kind and tender treatment; that shortly after marriage, and while residing at the house of the defendant's father, the conduct of the husband became cool and unkind towards her, manifesting indifference and habitual ill-will, and of such a nature as to occasion constant distress and wretchedness of mind; that after persisting for some months in this deliberate course of unkindness, evincing throughout a want of love and affection for his wife, he finally assaulted her, and, after being guilty of the unmanly and cruel act of throwing his hat in her face, he left the house and place, and has ever since wholly deserted his wife, refusing all attempts of friends at reconciliation, declaring that he had no affection for his wife and never had, and evincing a determined purpose not to live with her again. The wife was thus left without any means of support, and without a home of her own. She staid for some months after he left, at the house of his father; then from place to place, and is now residing at her father's house. The facts show deliberate, continued unkindness, much ill will, a total want of love and affection, and a most unmanly and cruel act of outrage upon the person of the wife.

It is quite apparent that the affection of the husband, if he ever had any, for his wife, has changed to bitterness, and to a state of feeling akin to absolute hatred; that all the ends of the marriage have been and will continue to be frustrated by the misconduct and settled ill will of the husband, and that the wife might, from the circumstances, with much reason apprehend danger to herself from future cohabitation, if that were at all possible or probable.

And we may notice here, though somewhat out of its place, that the conduct of the wife was exemplary, and, as said by one of the witnesses, generally pleasant towards her husband.

We conceive that the ill treatment by the husband, as shown by the evidence, was of such a nature as in the terms of the

Statute, to render their living together insupportable, and it is therefore ordered that the judgment be reversed and a decree be entered granting the divorce in conformity with the prayer of the petition.

Reversed and reformed.