## No. 2524.

### B. D. SAPP v. CAROLINE SAPP.

1. DIVORCE—CRUELTY.—That a wife at one time expressed fear that her husband would poison her is not cause for divorce.
2. DIVORCE—CONDUCT OF PARTIES.—After the act alleged as grounds for divorce it appeared that the husband seeking the divorce endeavored to induce the wife to live with him, negatives the allegation, necessary to authorize a judgment for divorce, that the act was such as to render their living together insupportable.

APPEAL from Shelby. Tried below before the Hon. James I. Perkins.

This is an appeal from a judgment refusing a divorce from the wife at suit of appellant, the husband.

The grounds relied on were that the wife had refused to take food prepared by him in her illness, fearing it was poisoned, and had left him to reside with her children.

The testimony is given substantially in the opinion.

*H. B. Short, Field & Oliver,* for appellant: Appellant was a kind, affectionate and indulgent husband to appellee, supplying her with a good home and surrounding her with all the necessaries and substantial comforts of life, and in every respect performing his duty to her. When his wife charged him with the attempt to poison her, he remonstrated with her kindly, and forbore to retaliate. The charge was entirely groundless and inexcusable, and was of that nature such as constitute "excesses, cruel treatment and outrages" towards him, the husband, on the part of the wife, mentioned in the statute, for which a decree of divorce should be granted. The charge was made publicly, and was reiterated, and was immediately followed by the declaration, made publicly, of her intention to abandon him, which intention was at once carried into execution, over appellant's protest, and while appellee was sick, in the midst of a hard rain, thus publicly demonstrating that she made the charge seriously.

Some seven months after appellee had thus abandoned appellant, and before the institution of this suit, appellant went to appellee and endeavored to persuade her to return to and

live with him, but she refused and continued to remain away from him, and by her conduct on this occasion and since her abandonment, she reiterated and emphasized the charge she preferred against him at the time she abandoned him.

It is now the well settled doctrine in this State that a charge made by the husband against the wife of a want of chastity is of itself "altogether a sufficient act of cruelty to justify dissolving the bonds of matrimony," in the apt words of Chief Justice Willie. (Jones v. Jones, 60 Texas, 460.) In this case the distinguished Chief Justice also says: "Of all the treasures cherished by a woman, her reputation for chastity is the dearest. It is the immediate jewel of her soul; and, when an attempt is made by her husband, who should be her protector, to rob her of it, cruelty on his part has reached its utmost limit." What chastity is to a woman, honor is to a man, and the loss of the reputation therefor by either is the certain destruction of a good name.

> Good name in man and woman   *   *   *   *   *
> Is the immediate jewel of their souls:
> Who steals my purse steals trash; 'tis something—nothing;
> 'Twas mine, 'tis his and has been slave to thousands;
> But he that filches from me my good name, ·
> Robs me of that which not enriches him,
> And makes me poor indeed."

And when an attempt is made by a wife to rob her husband of that which she promised always to uphold, and which is dearest to him, "Of the immediate jewel of the soul," his honor and good repute, it is respectfully submitted that "cruelty on her part has reached its utmost limit."

The conduct of appellee in this case has not only desolated the home whose hearthstone she had promised to brighten, but has deeply and irrevocably wounded the feelings of him whom she was in duty bound to comfort, crimsoned his good name with the suspicion of a foul crime, and exposed him to the imminent danger of losing the good opinion of those among whom he now lives and has lived the greater part of a well-nigh spent life. This is the work of a wife, coolly and deliberately performed, whose victim is her faultless husband.

Counsel cited Revised Statutes, 2861; Williams v. Williams, 67 Texas, 198; Jones v. Jones, 60 Texas, 451; Bahn v. Bahn, 62 Texas, 518; Taylor v. Taylor, 18 Texas, 574; Huilker v. Huilker, 64 Texas, 1.

GAINES, ASSOCIATE JUSTICE. This is a suit for a divorce brought by the husband, who is appellant here, against the wife. The ground of the action was cruel treatment.

The plaintiff proved that he had been to his wife a kind and dutiful husband; but that while his wife was suffering from an attack of pleurisy, she refused to drink a cup of coffee, he had prepared for her at her request, until he had drank from the cup himself; and that she charged in substance, that he was attempting to take her life, and wished to poison her. One Mrs. Holden, who was a witness in the case, was present attending upon Mrs. Sapp at the time. No other person was present except the parties to this suit. Mrs. Holden, after the wife's refusal to drink the coffee prepared by the husband, prepared another cup, which Mrs. Sapp drank, but not until the husband had first drunk a portion of it. Shortly after this the wife declared her intention to go to her children, who it seems lived at her own house; and the husband finding his remonstrances unavailing, finally removed her. This was in November, 1886. In July of the following year, he went to her and entreated her to return to his home. This she refused, offering to live with him at her own house. He then proposed to procure a residence in a neighboring town, if she would live with him, but this she also refused. The physician who attended Mrs. Sapp during her illness, testified that he saw no signs of mental aberration, although he stated that the disease is accompanied by fever, which sometimes produces "flightiness," and sometimes delirium.

We think the court did not err in holding the evidence insufficient to warrant a divorce. It is unnecessary to enter upon any extended discussion of the law as applied to these facts. Compared with the rulings in other States, our courts have given a most liberal construction to our statutes defining the grounds of divorce. They hold that, to constitute such cruelty as will authorize a divorce, that it is not necessary that physical injury should be inflicted or threatened, but that mental suffering, when intentionally imposed, may be so grievous and lasting as to warrant a dissolution of the bonds of matrimony. (Wright v. Wright, 6 Texas, 3; Sheffield v. Sheffield, 3 Texas, 79; Taylor v. Taylor, 18 Texas, 574; Bahn v. Bahn, 62 Texas, 518; Jones v. Jones, 60 Texas, 451.) In the great majority of the cases in which this doctrine has been announced, the cruelty consisted mainly in a charge of adultery

by the husband against the wife, and the specific act of cruelty has been supported by proof of other wrongs. Bahn v. Bahn, supra, is probably the only exception in our Reports to the rule that something more than a single public accusation of an offense is necessary in order to warrant a divorce. We are referred to no decision where a divorce has been granted the husband on the sole ground of a false charge against him, publicly promulgated, by the wife.

There is no evidence in the record of any act of cruelty on part of the wife towards the husband, except the expression of her fear that he wished to poison her, or of any other undutiful conduct, except her leaving his bed and board and living apart from him with her children. When the charge was made, there is no evidence that anything had transpired to arouse resentment or ill will towards her husband, or in fact that it was prompted by any desire to injure him. It does not appear that it was ever made before or afterwards. Under these circumstances, it is not surprising that the trial judge asked the medical attendant who was examined as a witness as to the probable condition of her mind during the time of her sickness. It would seem from the evidence that the theory that the fears of poisoning expressed by the defendant were the result of a temporary aberration of mind produced by sickness, is about as reasonable as any other hypothesis that can be brought forward.

But further, our statute only authorizes a divorce of a married couple for "excesses, cruel treatment or outrages," when "such ill treatment is of such a nature as to render their living together insupportable." (Rev. Stats., art. 2861.)

Very soon after the alleged wrong, the plaintiff remonstrated against his wife going away; and after she had gone and continued to live apart from him, he went to her and sought to induce her to return to his house, offering even to change his residence to accomplish that result. Under these circumstances, it would be absurd to say that their living together was insupportable to him. His conduct is utterly inconsistent with the theory of his case.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered October 19, 1888.