McNABB v. McNABB.  (No. 1412.)

(Court of Civil Appeals of Texas.  Amarillo.
Nov. 20, 1918.  Rehearing Denied
Dec. 11, 1918.)

1. DIVORCE ⚖➡27(3)—GROUNDS—"CRUELTY."

In an action for divorce upon grounds of
cruel treatment, it is not necessary to show ac-
tual violence committed; "cruelty," as used in
statute, being broad enough to include outrag-
es upon the feelings inflicting mental pain and
anguish, where the conduct has been studied,
willful, and deliberate.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Cruelty.]

2. DIVORCE ⚖➡27(1) — CONDUCT RENDERING
LIVING TOGETHER INSUPPORTABLE.

Under statutes authorizing divorce for ex-
cesses, cruel treatment, or outrages rendering
living together insupportable, husband is not
entitled to divorce, unless cruelty of wife was
intended to injure him.

3. TRIAL ⚖➡261—REFUSAL OF ERRONEOUS IN-
STRUCTION.

Requested charge that acts or quarrels, the
result of sudden outbursts of temper, are not
grounds for divorce, where not correct in its
entirety, was properly refused, but sufficiently
called court's attention to omission.

4. DIVORCE ⚖➡27(1) — GROUNDS — MARITAL
WRANGLINGS.

Parties cannot be divorced for incompati-
bility, or because they live unhappily together,
or merely because they possess unruly tempers,
or for marital wranglings.

5. DIVORCE ⚖➡148—CRUELTY—INSTRUCTIONS.

In action by husband for divorce based on
statute authorizing divorce for excesses, cruel
treatment, or outrages rendering living together
insupportable, *held*, under facts, that jury
should have been instructed that, if conduct
of defendant wife was due to her mental or
physical condition, occasioned by the state of
her health, there would be no cruelty under the
statute.

6. DIVORCE ⚖➡147—ISSUES NOT RAISED BY
PLEADING—SUBMISSION.

Although recrimination was not pleaded, de-
fendant wife had right to have issue submitted,
where raised by the evidence, since, even where
there is no answer, it is the duty of the court
to hear any testimony which shows that plain-
tiff is not entitled to a divorce.

7. DIVORCE ⚖➡53—DEFENSE—RECRIMINATION.

While recrimination need not be of equal
degree, it must be of the same general char-
acter, and such as is reasonably calculated to
have provoked the misconduct of defendant.

8. TRIAL ⚖➡248 — CHARGE — SUFFICIENCY IN
GENERAL.

Where trial judge sought to leave to the
jury, not only the findings of facts, but also
whether in law they were sufficient to render
further relation of husband and wife insupport-
able, he should have carefully applied the law
to the facts, and not simply announced abstract
propositions of law in his charge.

Appeal from District Court, Oldham Coun-
ty; Reese Tatum, Judge.

Action for divorce by C. N. McNabb against
Ivy E. McNabb.  From the judgment render-
ed, defendant appeals.  Reversed.

L. M. Kenyon, of Vega, and Veale & Lump-
kin, of Amarillo, for appellant.

Kimbrough, Underwood & Jackson, of
Amarillo, for appellee.

HUFF, C. J.  This action was instituted
by appellee, C. N. McNabb, against his wife,
Ivy McNabb, for a divorce.  The petition is
quite voluminous, and is based on the stat-
ute authorizing a divorce for excesses, cruel
treatment, or outrages of one spouse towards
the other, when the ill treatment is of such a
nature as to render their living together insup-
portable.  The petition specified certain acts
of cruel treatment or outrages, some 23 acts
or instances were testified to, most of which
were alleged in terms in the petition.  These
specifications were followed by the general
allegation:

"That each and all the acts and circumstances
heretofore alleged constituted and were a se-
ries of studied and deliberate vexations and in-
sults on the part of the defendant towards the
plaintiff, and were intended and calculated to,
and did, produce in plaintiff great humiliation,
annoyance, and agitation, and caused him to
fear the infliction of great bodily harm by de-
fendant upon his children, especially upon his
little daughter, and kept him in a state of con-
stant nervousness, dread, and apprehension,"
etc.

The evidence shows that the plaintiff was
a widower, with six children, by a former
marriage, and about 38 years old when he
and appellant were married; that she was a
school-teacher about 34 years old at that
time; that they were married in May, 1916,
and continued to live together as man and
wife until some time perhaps in November.
The acts alleged consist in neglect on her
part to take proper care of the little girl, and
the infliction of punishment on some of the
children, the manifestation of temper and of
harsh words used by her in the presence of
others upon certain occasions, such as having
his mother and two sisters in the car, going
to his pasture and returning late after din-
ner, while she and the children were eating
their dinner, that she ignored the presence of
his parents and sisters, and occasions which
manifest lack of sympathy for the appellee
when his little girl was burned.  On one
occasion she inflicted a slight punishment
upon the little girl for stopping in town,
when she had told her to come home direct
from school.  The facts show the little girl
saw her father in town and went to him,
and he sent her on another errand, and up-
on return the child received the punishment.
Another act was appellant told the little girl

to wash the dishes, and her father was in the house, and the little girl went to him and told him she was sick. The father petted her and told her he would wash the dishes, and he did. The wife said the little girl was not sick, and just said that to keep from working. Appellee admits that he did not think she was much sick, but that he did not think his wife ought to have gotten mad. On another occasion three of the children on a rainy day were in an upper room making noise and disturbing the appellant, and she called them down and told two of the small ones they could go back, but told one of the boys to stay down in the room and not go up. After remaining in that condition quite a while, the father says he thought the child had been sufficiently punished, and told him he could go back to the room, and as he started up the steps the wife caught the boy and slapped him for disobedience. On the occasion of going to the pasture in the car with his mother and sisters, the wife had requested them to wait until after dinner, and they would all go together; but he went nevertheless, and returned late after the meal hour. His wife then told him that she wanted the car that evening, and he said he would have to use it to go back to the pasture and fix his windmill. She said then she could walk to town, and, as we gather from the record, did so. We find no evidence that he ever invited her to go with him, either in the morning or afternoon, with the rest of the family, to the pasture, or that he offered to take her to town—said if she had asked him he would have taken her. On another occasion he promised the car to her, and it seems that he let his son and his son's visitor take the car, and she manifested, as he thought, anger and impatience, she asserting that she would not get the car and could not go out driving; but the boys did return in time, and they did drive until late that evening, and they came back, and, upon retiring, the little girl grew fretful, and wanted her father to come and lay down by her, which he did, and remained until he dropped off to sleep and slept all night. Going to his wife's room the next morning she was indignant at his remaining away, and upbraided him about it, and he explained the situation and the occasion of his remaining away, and she said that if he wanted to sleep with the girl to do so, and not to come to her room, and he then told her that it seemed that they could not live together peaceably, and that she could leave, and he would make provision for her, and give her money, and she could sue for a divorce. She told him that she did not want any divorce, and that she wanted him, and that she had done wrong, and asked his forgiveness, and that she would rather be dead than to live without him. He took his boys to Amarillo to place them on the train to go off to school,

and it appears to be admitted that he consulted a lawyer, and when he got back home found that she had attempted to commit suicide, or, as he thought, just made a pretense, called for a doctor, and had her examined, who gave her some treatment. An empty bottle, which had contained chloroform, was found, none of which he thought she had taken; he called in another physician, and the evidence appears to be that he agreed to send her to Ft. Worth to be treated for some nervous disorder, and that she did go to Ft. Worth and was under treatment for a month; that while there he wrote to her not to come back home, but she did, and he then said without his consent she intruded herself on his home and family, and he finally filed this suit.

There are other incidents, such as having lost a knife, and calling up the children to ascertain if they had it, and insisting that they did, and that she at one time lost her purse, with some money in it, going through the same process that she did with the knife, and on one or two occasions insisting to her husband that she believed the children had her knife and purse. The knife was found in her closet, and she insisted that one of the boys had thrown it there. The purse was never found. Upon several occasions, after some of these unpleasant passages, she would take to her bed and stay from two to three days, and sometimes a week or longer, refusing food or attention from the rest of the family. There are many other incidents and particulars about these special incidents above named, which we do not try to make full, thinking perhaps this will be sufficient for an understanding of the general character of the alleged grounds of cruelty.

[1] The appellant presented general and special exceptions to the petition, which were overruled, and upon which assignments are predicated. It will be unnecessary to consider the assignments specifically, as it is believed they may be sufficiently considered by a general discussion of the law conceived to be applicable to the record made, both by the pleadings and the evidence. Appellant apparently, in the court below and in this court, proceeded upon the theory, in order to entitle one to a divorce on the grounds of cruel treatment or outrages, there must have been actual violence committed, attended by danger to either the life, limb, or health, or a reasonable apprehension of such injury. It has been held repeatedly the ordinary meaning of "cruelty," as used in the statute, is broad enough to include outrages upon the feelings, inflicting mental pain and anguish, such as a series of studied vexations, and deliberate insults and provocations, without apprehension of personal violence or bodily hurt. The ill treatment contemplated by the statute has often been held to include injury to the feelings and sensibility, as well as

physical injuries. The early case of Sheffield v. Sheffield, 3 Tex. 79, announced:

"It cannot be doubted that a series of studied vexations, and deliberate insults and provocations, would, under our statute, be sufficient cause for divorce, without apprehension of personal violence or bodily hurt."

The above case appears to have been followed by our courts; but there have been a few discordant notes. Wright v. Wright, 6 Tex. 3; Jones v. Jones, 60 Tex. 451; Sharman v. Sharman, 18 Tex. 526; Williams v. Williams, 67 Tex. 198, 2 S. W. 823; Shook v. Shook, 125 S. W. 638; Aycock v. Aycock, 131 S. W. 1139; Dawson v. Dawson, 63 Tex. Civ. App. 168, 132 S. W. 379; Smith v. Smith, 200 S. W. 1129; Bahn v. Bahn, 62 Tex. 518, 50 Am. Rep. 539; Rivers v. Rivers, 133 S. W. 525; Le Fevre v. Le Fevre, 205 S. W. 842. Judge Speer says in his work (Law of Marital Rights, § 526, p. 674):

"It has been suggested that, where the evidence fails to show physical violence by the husband towards the wife, and fails to show such cruel treatment of her as to produce such a degree of mental distress as would. threaten to impair her health, it would be insufficient; but this is not the test. The test is whether or not it renders their further living together insupportable. And whether the conduct is that of the husband or the wife, the question remains for the jury whether it is of the character contemplated by the statute."

Under the first proposition contained in the above paragraph the author cites, in note 10, Eastman v. Eastman, 75 Tex. 473, 12 S. W. 1107; Bush v. Bush, 103 S. W. 217; Ryan v. Ryan, 114 S. W. 464; and we may add Bloch v. Bloch, 190 S. W. 528. Under the last paragraph in the quotation some of the cases heretofore cited by us are cited, and also Cunningham v. Cunningham, 22 Tex. Civ. App. 6, 53 S. W. 75; Dority v. Dority, 62 S. W. 106; Ingle v. Ingle, 62 Tex. Civ. App. 205, 131 S. W. 241. The Eastman v. Eastman Case, supra, does not support the proposition that physical violence or apprehension of bodily hurt under our statute must accompany studied insults in order to establish cruelty. That case holds to the contrary. The cruelty required must be "ot such nature as to render their living together insupportable." Judge Gaines says in the above case:

"But, excluding the exceptional case of Wright v. Wright, 6 Tex. 3, in which the cruelty alleged consisted in part of the murder of the plaintiff's son by her husband, we believe that no decision of this court can be found in which a judgment for divorce on the ground of cruelty has been permitted to stand, in the absence of some degree of physical violence, except those in which the husband had accused the wife of infidelity. Jones v. Jones, 60 Tex. 461; Bahn v. Bahn, 62 Tex. 518 [50 Am. Rep. 539]. This course of decision seems to have led to the conclusions of law announced by the learned judge who tried the case below. But

it does not follow that, because no such decision can be found, a case of cruelty sufficient to justify a decree may not exist, in which neither personal violence nor an unsupported charge of adultery is found as an element. In Wright v. Wright, supra, the refusal by the husband of medical aid to the wife during a violent attack of sickness was one of the acts of cruelty alleged as grounds for a divorce, and in the opinion was relied upon as one of the averments upon which the sufficiency of the opinion was sustained. An alleged order to the family physician not to attend upon the wife in case of illness, though no sickness actually existed at the time, was treated, in the leading case of Evans v. Evans, 4 Eng. Ecc. R. 350, as if it might be deemed an act of cruelty; but it was held that the allegation was not sufficiently proved."

See, also, Sapp v. Sapp, 71 Tex. 348, 9 S. W. 258; McAlister v. McAlister, 71 Tex. 695, 10 S. W. 294.

Though the statute may allow a divorce for conduct inflicting mental pain or distress, our courts have held such conduct must have been studied, willful, and deliberate. The facts of this case call for a recurrence to the purpose of the marital relation which should have at all times a just influence upon the mind, and those purposes cannot be better stated than in the language of Judge Hemphill, in the case of Sheffield v. Sheffield, supra, which, at the risk of tediousness, we quote:

"The parties have pledged themselves, not only for their own happiness, but for purposes important to society, to live together during the term of their natural lives. This engagement is the most solemn and important of human transactions. It is regarded by all Christian nations as the basis of civilized society, of sound morals, and of the domestic affections; and the relations, duties, obligations, and consequences flowing from the contract are so important to the peace and welfare of society as to have placed it under the control of special municipal regulations, independent of the will of the parties. The mutual comfort and happiness of the parties are the principal, but not the only, objects of the engagement. It is intended also for the benefit of their common offspring, and is an important element in the moral order, security, and tranquility of civilized society. The parties cannot dissolve the contract, as they can others, by mutual consent, and no light or trivial causes should be suffered to effect its rescission. While full effect is to be given to the statute, it should be remembered that, according to the experience of the most enlightened nations, the happiness of married life greatly depends on its indissolubility, and that the prospect of easy separation foments the most frivolous quarrels and disgusts into deadly animosities. Parties may not be able to live together very harmoniously, but they cannot be separated, except for reasons. approved of by the law. And when they know they must live together, except for causes prescribed by the law, they learn, in the language of Lord Stowell, 'to' soften, by mutual accommodation, the yoke which they know they cannot shake off; they become good husbands and wives from the necessity, of re-

maining husbands and wives; for necessity is a powerful master in teaching the duties it imposes.' Such construction ought to be given the statute, and such weight allowed the acts of the parties, as would effect the legislative intention; but there should not be such looseness of exposition as would defeat the beneficial objects of the marriage institution, and sunder its bonds with almost as much facility as if it were a state of concubinage, dependent alone on the will of the parties."

Again, the facts of this case call for the wise caution suggested in the case just quoted:

"The jury may have, perhaps, labored under erroneous, but somewhat prevalent, impression that persons who do not live very agreeably together, and who, in point of fact, are separated, should in law be divorced. Whatever opinions they may entertain as private persons, they are not, in their official capacity as jurors, to inquire whether the happiness of the parties might not be promoted by separation, or whether there has been a want of that tenderness and affection which should characterize the matrimonial relation, but whether the acts proved are such as to destroy the happiness of married life and render its further continuance insupportable."

Care should be exercised in charging the jury or submitting the case in divorce suits. Judge Lipscomb's statement in Byrne v. Byrne, 3 Tex. 336, ought to be, and we believe is, yet the rule:

"It is not sufficient that a jury has found that outrages have been committed of such a nature as to render their living together insupportable. What is meant in our statute by 'insupportable' and 'outrages' is a question of law. The existence and truth of the facts that amount to such outrages are for the jury to find."

In this case there is a general verdict under a very general charge. Just what acts or conduct the jury found true or cruel, and of such a nature as to require a decree of separation, we are left to surmise. Some of the acts are trivial, and the supposition that these are just causes for a divorce is preposterous. In fact, none of the acts within themselves can be said to be cruel within the meaning of the statute. Many of them evidence petulance, occasional sulkiness, or freaks of temper. The authority exercised by appellant over the children does not appear to have been cruel or excessive, and the issue is suggested that she acted within her rights as the wife of appellee, as well as by his invitation. So we think the evidence raised the issue as to whether some of the expressions of anger by the wife did not find their matrix in the apparent neglect or indifference of the husband. The husband in this case admitted that he did not love his wife, and admits that he bluntly so told her, while she protested that she cared for and loved him, and, when he offered her money to leave him, she told him she did not want any money, but wanted him.

[2] The general charge of the court defining cruelty perhaps is correct as far as it goes. The cruelty must have been intended to injure the husband, and must appear to be an act prompted by a desire to injure him. Sapp v. Sapp, supra. The cruelty or outrage must have been directed towards him. The facts raise the issue that in punishment of the children appellant was acting within her rights; that the punishment inflicted on the children was perhaps the result of the husband acting at cross-purposes with her, and had directed the children contrary to her wishes; that he, on occasions, knew she wanted to accompany him in the automobile drives and rides; that he took others, or let them have the car, without inviting her to go with him, or the like. A sensitive woman may readily have felt that she was neglected, ignored, or outraged in that particular, and have resented the conduct of her husband.

[3, 4] The requested charge No. 2 called to the court's attention that acts or quarrels, the result of sudden outbursts of temper, or incompatibility of temper, are not grounds for divorce. The charge as requested in its entirety was not correct, and as requested was properly refused; but we think it sufficiently called the court's attention to this omission. The rule in this state, as well as in others, is that parties cannot be divorced for incompatibility, or because they live unhappily together, or merely because they possess unruly tempers, or for marital wranglings. If the acts of appellant were only from sudden outbursts of temper, the acts complained of would not have authorized a divorce; or if any such acts were the result of sudden temper, and not intended to injure the appellee, the jury should have been told to disregard them. The acts in this case were not within themselves cruel. They were only so if they were willful, and for the studied purpose of inflicting injury upon the appellee. The acts must have arisen from a motive to cause suffering to the appellee. The appellant was entitled to have this phase of the case presented for the consideration of the jury.

[5] We think, under the facts of this case, the jury should have been instructed, if the conduct of appellant, or any of her acts were induced by her mental or physical condition at the time, occasioned by the state of her health, that they would not be such acts or conduct as would be cruelty under the statute, nor would any of such of them that were so occasioned. While the charge requested was coupled with the issue of estoppel, which, as we view the case, was unnecessary, yet the physical and mental condition of the appellant was raised by the evidence.

[6] Again, the appellant asked a charge upon recrimination as a defense. This was refused. It is insisted that there is no evidence of recrimination. We are inclined to think there is, as heretofore suggested. All the acts charged as cruel are such as may frequently occur in the marital relation un-

der the circumstances surrounding this one. Perhaps we should not discuss the facts, but we think that issue is raised by the record, and the court should have submitted that issue. It is insisted that there is no allegation of recrimination in appellant's answer.

"The rules of pleading which apply in other cases do not apply to a defendant in a divorce case in this state, and, although he may have no answer at all, it is the duty of the court to hear any testimony which would show that the plaintiff is not entitled to a divorce. Bostwick v. Bostwick, 73 Tex. 182, 11 S. W. 178." Hartman v. Hartman, 190 S. W. 846.

[7] As to the character of misconduct which will raise the issue of recrimination, we believe the rule is correctly stated in the following:

"In order to defeat the right to a divorce, while it [recrimination] need not be of equal degree with that of the defendant, it must be of the same general character, and such as is reasonably calculated to have provoked the misconduct of the defendant." Bohan v. Bohan, 56 S. W. 959, and authorities cited.

With regard to appellant's right to exercise reasonable control of the household affairs, and to correct the children, the appellant, by requested charge No. 5, requested the submission of that issue, and we regard the application of the law to the facts as there sought to be applied substantially correct. It is true the court had given special charge No. 1, which in effect is simply an abstract enunciation of appellant's right in the home of appellee, yet it did not attempt to apply the law to the facts, while the requested charge No. 5 does substantially do so.

[8] In reversing this case, we desire to say that we regard the charge of the court as being very general, announcing simply abstract propositions of law. Inasmuch as the court sought to leave to the jury, not only the finding of the facts, but also the question whether in law they were sufficient to render the further relation of husband and wife insupportable, we believe he should have carefully applied the law to the facts, so that the jury could have determined the rights of the parties, and whether the acts were such in their nature that the marital relation should have been sundered. We believe the judgment should be reversed; and it is accordingly so ordered.