Hemphill, Oh. J.
There was no demurrer to tlie petition ; and as no question has been raised on the sufficiency of the pleadings, I will pass them over with tlie single remark that they are objectionable on account of their vagueness and uncertainty. The acts of cruelty, with specifications as to time, piace, <fcc., should be stated, that the defendant may know what he is called upon to answer, and the court be apprised of the issues between the parties. The certainty required in pleadings in causes of this character has been discussed in tlie case of Wright v. Wright, (3 Tex. R., 168,) and to that it will suffice, for the present, to refer.
The only questions material to be considered arise on the alleged errors in the charge of tlie court.
And first, the jury are instructed that if they believed from tlie evidence that defendant beat plaintiff as charged, in consequence of which they separated, and they afterwards lived together, that such beating, before they separated and came together again, could form no ground for a divorce, and they must discard it from consideration in making a verdict.
This instruction is equivalent to the legal proposition that reconciliation between the parties is a perpetual bar to á divorce for any precedent act of cruelty. This proposition was held, in tlie case of Wright v. Wright, decided at tlie last term of this court, to be against law. Of this decision tlie judge was, doubtless, not apprised; nor lias'it been referred to in the argu- *272 monís of counsel. As the opinion in that case lias not been published in hook form, I will cite one or two paragraphs from it at length, viz: “It is clear that the effect of renewed matrimonial cohabitation, on causes of divorce arising from cruelty or outrages, lias not been prescribed by statute; and we may with propriety recur to the doctrines of the common law as received in tlie ecclesiastical courts in England on the subject. Reconciliation in that law is technically termed condonation, and it does not constitute, under all circumstances, a perpetual bar against complaint for antecedent offenses. Condonation is defined to be a conditional forgiveness, that does not take away the right of complaint in case of continuation of the injury, which operates as a revivor of former wrongs. By the ecclesiastical law, fresh acts of adultery or fresh acls of cruelty will revive former acts of adultery or cruelty. In Westmeath v. Westmeath (4 Eccl. R., 490) it is said that ‘tlie force of condonation varies according to circumstances.’ The condonation, by a husband, of a wife’s adultery, still more, repeated reconciliations after repeated adulteries, create a bar of far greater effect than does a condonation, by a wife, of repeated aels of cruelly committed by a husband. In the former case, the husband shows himself not sufficiently sensible to his own dishonor and to his wife’s contamination ; and reconciliations often repeated amount almost to a license to her future adultery, so as to form nearly an insuperable and immovable bar ; but the. forbearance of tlie wife, and her repeated forgiveness of personal injury, in hopes of softening tlie heart and temper of herimsband, and under tlie feelings of a mother anxious to continue in the care and nurture of her children, are even praiseworthy, and create but a slight bar, removed by tlie reasonable apprehension of further violence.” (3 Eccl. R., 390; Shelford, 436, 445.)
From these doctrines it appears that condonation operates a bar only where there is no further ill-treatment — where tlie offending parly discharges bis duty according- to the marriage obligations, or where liie injured party is treated with that kindness and affection due to tlie conjugal relation. If there be fresh cruelty or outrage, the former acts will be revived, and the impediment raised by'the reconciliation removed.
t is scarcely necessary to say that, by the statute, in suits for divorce fbrought for cause of aduitery, if'the injured party, having knowledge of the criminal fact, shall admit the guilty partner into conjugal society or embraces, such condonation will operate as a good defense and perpetual bar to the suit.
But this effect of reconciliation has not been extended beyond canses for adultery; and rules and doctrines of the ecclesiastical law, so far as they are applicable, and especially when their justice and good sense demand our assent, must be enforced.
There are other points growing out of this instruction discussed in the case of Wright v. Wright, and to Ibis case reference may lie made. Tlie charge, in the latitude of its expression, is erroneous. It would be consistent witii law only in the event that tlie, causes of divorce «-ere limited exclusively to offenses committed anterior to tlie reconciliation, there being no subsequent misconduct of a character to excite apprehension of bodily injury.
2d. The jury were instructed by the judge, that a charge made by a husband against his wife, that she had stolen his money, they living together, is not a charge of larceny; that the wife, while living with the husband, cannot commit iarccny by taking his property.
Whether such be a charge of larceny or not was but a mere incident of the primary subject of consideration for the jury, viz: whether such charge, accompanied with the threat, constituted such an act of cruelty as to excite reasonable apprehension that the former outrages would be repeated, or that she would be subjected to'great indignities, extending, jierliaps, oven to the danger of life. It is immaterial whose money was taken, whether that of tlie husband or of the wife. If the husband, from supposed rights of property iu himself, or by virtue of that awful supremacy which, in liis estima *273 ■tion, justified the use of tlie club to enforce domestic sway, deemed such taking to be disobedience to his sovereign authority, to be punished with blows and bruises, and even the loss of life, it is not material whether tlie offense charged was a violation of tlie laws of the land or not. This, it is true, might have ■aggravated tlie heinousness of the charge. But where the charge is made and used as tlie pretext for violence and outrage, it is not material what was tlie intrinsic character of tlie act. In fact, if'the act were totals inoffensive-in itself — if it formed no just ground of complaint — so much tlie more flagrant would be the outrage of violence threatened or inflicted on account of such act.
But, was there no cruelty in tlie public accusation that the wife had stolen his money? Did he not intend to blacken her character, destroy her reputation, inflict upon her lasting disgrace, and thus poison the sources of her happiness? There can be no doubt that his intention was to charge her wir.li the crime of theft; and there can be as little doubt that such criminatory ■ charges, although not sufficient in themselves to justify the disruption of the bonds of matrimony, yet, in conjunction with other circumstances, they may constitute such ill-treatment and outrage as to render living with the offender altogether insupportable.
But this charge does not stand alone. It is accompanied with a threat. The statement of facts does not show what the threat was. It is left to inference. The pleadings charge that he threatened her life; and in the defect of the statement as to what the threat was, we must infer that the proof sustained ■the allegation, or at least that it was a threat of bodily injury. Such threat, under the circumstances, might well inspire the plaintiff with apprehension .and terror. She had been before exposed to the merciless inflictions of his club or baton of authority. Her life had been previously endangered by the unbridled violence of his passions; and she might very well presumí', and so might the court and jury, unless all the rules of induction and the lessons of experience be discarded, that the cruelties which had been once inflicted might again be repeated, and that the threats of one whose previous acts had shown his temper to be brutal and ungovernable were not to be disregarded, ■or viewed without alarm and apprehension.
Tlie question of what acts will constitute cruelty has been fully discussed in previous cases. (Vide Sheffield v. Sheffield and Wright v. Wright, 6 Tex. II., and Wright v. Wright, 6 Tex. R., 3.) There is great difficulty in defining legal •cruelty. Its ordinary criterion is an apprehension of danger to life, limb,'or health. If, from all the circumstances, it appears that one of the partners .justly entertains such apprehensions, it becomes a case for the dissolution'of the bonds of matrimony. The duties of self-preservation are paramount to those of marriage. The bond of nuptial happiness is converted into a yoke of wretchedness, and the statute authorizes and requires it to be broken and removed.
The questions in this case have been examined at length in causes previously decided, and I will not continue their discussion. As said before, no exact definition of legal cruelty can be given, for there may be cases in which mere blows should not be so considered. These may be given, but still there may be strong affection in the party. Among persons of coarse habits they might pass for very little more than rudeness of language or manner. They might ■occasion no apprehension and be productive of but slight unhappiness. The .jurors have the parties before them, and can appreciate and place the proper estimate on their conduct, and its effect upon each other; and much is confided to their judgment and discretion. But where the life of one has been ■endangered by the deliberate outrage of the other, and this is again threatened, we must disregard all presumptions before we can infer that such threats bode no danger and constitute no foundation for dread and apprehension.
The judgment is ordered to be reversed, and the cause remanded for a new (trial.
Judgment reversed.