David v. David.

## DAVID *vs.* DAVID.

[BILL FOR DIVORCE BY WIFE ON THE GROUND OF CRUELTY.]

1. *Acts of cruelty proved but not alleged no ground for decree.*—Specific acts of cruelty which are established by the evidence, but not charged in the bill, cannot be made the foundation for a decree, although the court may well consider and give weight to them as tending to explain and corroborate other acts specifically alleged in the bill.

2. *Substance of charge only need be proved.*—The particular act of violence charged in the bill must be substantially proved, but it is not necessary that all the non-essential circumstances attending it should be proved precisely as alleged ; thus, where the wife charged in her bill that her husband struck her several times with a stick, choked her down, and drew his knife and threatened to cut her throat, while the evidence was that he choked her, struck her with a whip, and pulled her hair—held no material variance.

3. *What is cruelty on the part of husband.*—Cruelty, where it does not affect life, limb, or health, is frequently a relative term, whose meaning must be determined by the particular circumstances of each case : between persons of education, refinement, and delicacy, the slightest blow in anger might be cruelty, while between persons of a different character and walk in life, it might not mar to any great extent their conjugal relations, nor materially interfere with their happiness.

4. *How affected by provocation on part of wife.*—If the evidence shows that the wife, by her own misconduct, has brought upon herself the ill-treatment of which she complains, and which is not wholly disproportioned to the provocation,

she is required to make out a much stronger case for relief than when her own conduct has been entirely blameless; and on this ground a divorce was refused in this case.

5. *Costs.*—The bill having been dismissed, and a divorce refused, on the ground that both parties were in fault, the costs were equally divided.

APPEAL from the Chancery Court at Wetumpka.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Mrs. Milly David against her husband, Henry P. David, seeking a divorce on the ground of cruel and inhuman treatment. The chancellor granted the divorce, and his decree is now assigned for error.

ELMORE & YANCEY, for the appellant.

NAT. HARRIS, *contra.*

GOLDTHWAITE, J.—This was a suit brought by Mrs. David against her husband to obtain a divorce, on the ground of cruel treatment. The bill contains several specific allegations of cruel treatment, commencing in 1844, and continuing into 1847, when she separated from him, It is unnecessary to refer particularly to any of the specific allegations, which are stated as having occurred before the years 1846 or 1847, as there is no evidence to sustain them. It is charged, however, that in 1846, or 1847, he struck her several blows with a stick, and choked her ; and this charge is, we think, substantially made out by the testimony. There are other acts of violence of a similar character which are also proved, but a court would not be authorized to grant a divorce upon acts of cruelty which were not specifically alleged. The law, it is true, very properly allows the court to consider and give weight to matters which are not pleaded, as tending to explain and corroborate those which are ; but they cannot be the foundation, or only ground, for a divorce.—Whisper v. Whisper, 4 Barb. 217.

It is urged, however, on the part of the appellant, that none of the specific allegations of cruelty are established, and for that reason the case made by the complainant is not the same as that which is made by the bill. It is certainly true that the testimony does not prove the particular act of violence,

which we think is substantially proved, precisely as it is stated in the bill; but this is not necessary. All the circumstances which conduce to establish the charge need not be stated, nor, if stated, are they required to be proved unless they are essential. The strictest application of the rule does not require that more than the substance of the issue should be proved; and if the specification was that the defendant beat the complainant severely with a stick, while the evidence showed that it was done with a whip, the variance would be altogether immaterial. So, if the charge was that the violence was inflicted in different modes, only one of which was established, it would be enough; for the substance of the charge is, that the particular violence offered amounted to cruelty, and the charge is supported by showing any violence of a like kind which could be regarded as cruel within the meaning of the statute.—Clay's Dig. 170, § 3. To hold otherwise, would be to make the rule of pleading more stringent in this class of cases, than it is at law, even in cases of felony. Wordle's case, 2 East's P. C. 785; Page's case, *ib.;* Johnson's case, *ib.* 786; *ib.* 341. Here, one of the charges made by the complainant is, that the defendant struck her several times with a stick, choked her down, drew his knife, and threatened to cut her throat; and the evidence is, that he choked her, struck her with the whip he used for the correction of the negroes, and pulled her hair. The trifling discrepancies between the charge and the proof amount to nothing, and we regard the act of violence as proved sufficient to sustain the act which is charged, and should be of opinion that this act, taken in connection with other facts which are established, would, under ordinary circumstances, warrant a divorce. We say, *under ordinary circumstances* this would be the case, for the reason, that it is not every instance of harsh, or even unmanly violence, which would necessarily give to the wife a right to a divorce. There are, of course, some acts of violence, such as involve danger to life, limb, or health— acts which render it absolutely necessary for the safety of the wife that she should be separated from the husband; and when conduct of this character is proved, it admits of no palliation or excuse, if intentionally done. But every species of violence is not of this character. Cruelty is frequently a

David v. David.

term of relative meaning. Between persons of education, refinement, and delicacy, the slightest blow in anger might be cruelty; while between persons of a different character and walk in life, blows might occasionally pass without marring to any great extent their conjugal relations, or materially interfering with their happiness. We can lay down no certain rule, as to what violence will amount to cruelty, where it does not affect life, limb, or health. Each case must depend on its particular circumstances. The doctrine, too, of recrimination applies to cases of this character; and the rule established by the authorities is, that where the wife has brought upon herself the ill treatment of which she complains by her own misconduct, and it is not wholly out of proportion to the offence, or without any excuse when considered with reference to the provocation, before the court will lend an ear to her complaints, she must at least attempt to remedy the evil by a reformation of her own conduct. If, by a gross violation of her duties as a wife, she has provoked the husband to go further even than he should have gone, the blame in a great measure rests with herself, and it would require a much stronger case to authorize a divorce, than if her conduct had been blameless. Were it otherwise, the wife would have nothing to do but to aggravate her husband beyond endurance, and then complain of the treatment of which she alone was the cause. The way of reform is open to her, and if afterwards the husband is guilty of cruelty, the court will interpose in her behalf.—Waring v. Waring, 1 En. Ec. R. 211; Best v. Best, 2 *ib.* 158, 163; Moulton v. Moulton, 2 Barb. Ch. R. 309; Poor v. Poor, 8 N. H. 307.

In making an application of the principles to which we have adverted to the facts of the present case, we do not consider it necessary to go into the evidence in detail. The parties were married in 1843, and appear to have got along together tolerably until 1846,—at least we find her admitting, in 1845, that he had up to that time treated her kindly and affectionately, and that but for her children there would be no difficulty. In the year 1846, we have the first evidence of misconduct on her part, in the abuse of J. S. David and her husband, when the former visited the house for the purpose of purchasing a negro. We know that females are sometimes

apt to have views of their own as to the rights of their hus-
bands over property which they bring them, and we do not
deny that, generally speaking, it is proper and right to con-
sult them as to the disposition of such property ; but it is, to
say the least of it, highly unbecoming in a female to abuse a
visitor, who comes to the house on a matter of business with
her husband. In December of that year, or early in 1847,
we have evidence of a still more unbecoming (not to say out-
rageous) exhibition of temper on her part, apparently with-
out the least cause or provocation. We allude to her inter-
ruption of family worship—her abuse of the divine, who was
a visitor at the house, engaged in the performance of the ser-
vice, and the verbal castigation which she inflicted on her
husband, who exercised a degree of forbearance, at least in
the presence of strangers, which she did not always exhibit.
We pass over the fact, satisfactorily established by the same
witness—who is not connected with either of the parties, was
an inmate of the family for three months, and lived near them
for nine months—that her general treatment of her husband
was harsh and unkind ; that in the presence of third persons
she was in the habit of bestowing on him the epithets of
" tallow-faced devil", " poor scamp", " worth nothing", "liar",
&c.; and that sometimes, when there was company at the
house, she would sit at table without speaking to the appel-
lant, and refuse to help his plate. Then there is the scene
which occurred in the presence of the witness Pearson,
which is detailed by him with great fullness, and which, we
might have been inclined to think, was a little exaggerated,
were we not in some measure prepared for it by the evidence
of the other witness, and the attack on the preachers. From
what she said to this witness, the only just inference is, that
the parties had been quarreling in the morning, and the ap-
pellant, either for the purpose of alarming his wife, or actu-
ally with the view of ridding himself of his troubles, attempted
to drink off the contents of a vial of poison, which stood on
the sideboard. She tried to prevent him, and in the scuffle
the vial was broken ; and the husband, his design to make
way with himself in that mode being frustrated, went off,
threatening to hang himself. Mrs. David testified by her
tears and confessions her compunction for driving him to this

David v. David.

extremity; but on seeing him ride up to the gate, her feelings underwent a most sudden change, and she exclaimed, "There he is coming; I knew he was'nt going to hang himself—I wish to God he had!" and then announced her intention of giving him "a blessing", which promise she fulfilled by lavishing on him, according to the testimony of the witness, the most unmeasured and intemperate abuse, in language which, if not absolutely indecent, was at least low and profane—such as no female who had any respect for herself should have uttered. Conduct of this kind requires no comment. It may be that it was owing to the natural violence of a temper aggravated, as some of the witnesses seem to think, by an indulgence in the use of ardent spirits, though we do not regard the evidence on this point as satisfactory; but, if such was the case, it is no palliation. There may, as we have intimated, be cases where the offer of personal violence to a female might properly be regarded as an act of barbarous and unmanly cruelty; but we must discriminate—we must not be so unjust as to put all of the sex on the same level; and if a woman chooses to unsex herself, and forget that she is a female, she should not complain if others do not always remember it. The conclusion which a careful examination of the testimony has made upon our mind, is that the appellee was a woman of the most violent and aggravating temper, which she takes no pains to control, and entirely wanting in that refinement and delicacy of feeling which would cause her to measure the cruelty of a blow from her husband by any other standard than the bodily pain it occasioned. We think, too, the evidence establishes that the ill treatment she has received has been owing mainly to her own misconduct. A woman who is in the habit of cursing her husband, bestowing upon him in public the most degrading epithets, and grossly insulting his friends when they come to his house, does not occupy a very favorable position in a court of equity, when seeking to be relieved from a contract, the duties of which she has thus violated; and as the principal act of ill treatment is proved to have originated in a quarrel, the particulars of which the evidence does not disclose, but in which it is reasonable to suppose she acted in accordance with her temper and habits; and as no serious injury appears to have been contemplated,

or resulted, we cannot, under all the circumstances, consider her as entitled to a divorce.

We would not, however, be understood as defending, or even excusing, the conduct of the appellant. That he may have been greatly provoked and irritated, we do not doubt; but from the testimony we are strongly inclined to the opinion, that the property of the appellee was the principal inducement to the marriage on his part. At all events, it is certain that his conduct was not free from blame. While he gave the most indubitable proofs of being able to control his temper in the presence of third persons, he did not in private always exercise that degree of forbearance and meekness which became him as a man dealing with the mother of grown children, and as a professor of a christian church. The fault of the wife, in the use of the most irritating language, although it may prevent her from succeeding in a suit for a divorce, is no excuse for the infliction of personal violence of the character which the evidence shows was used in the present case.

Under the influence of the views we have expressed, the decree of the chancellor must be reversed, and a decree here rendered dismissing the bill; but the costs in this court and the court below must be divided—one-half to be paid by each party.