60   451
75   475

## WM. GIBSON JONES v. LULA V. JONES.

(Case No. 1527.)

1. SERVICE OF PROCESS.— The object of the statute, arts. 1230–1233, concerning service of citation, was to provide an easier and less expensive method of effecting service than by publication, and its provisions are to be liberally construed.

2. JURISDICTION.— While the domicile of the husband fixes that of the wife, no presumption to that effect can obtain in a suit for divorce brought by the wife, in a county in which she alleges her permanent residence to be.

3. DIVORCE.— The district courts of Texas have jurisdiction to pass upon questions affecting the continuance of the marital relations, in the suit brought by the wife in the county in which she has a permanent residence, no matter where the offenses for which the divorce is sought were committed. Following 9 Wall., 123, and other authorities cited.

4. SAME.— It is not improper in a suit for divorce to insert general charges of cruelty and follow them with allegations of one or more specific acts, which may or may not be included in the specific charge.

5. SAME.— A charge in a petition for divorce of excesses or cruel treatment, alleged to have been committed between the last of November and the first of May following, without designating the place, is sufficiently specific.

6. SAME.— In a suit for divorce brought by the wife, in which, among other allegations of cruel treatment, she charged that the defendant had filed a bill for divorce against her in another state, falsely charging her with adultery, it was not improper to attach a copy of the bill to the petition as an exhibit; and exceptions to the allegation on the ground that the bill was not sworn to were properly overruled.

7. PRACTICE.— Pleadings and all exhibits attached thereto and made a part thereof, whether good or bad, when no exceptions have been filed thereto, may be read to the jury as such.

8. EVIDENCE.— Evidence by a witness that the defendant in a divorce suit had stated to him that his wife was a prostitute at heart and had committed adultery is admissible under an allegation that the husband had told the witness that his wife " was a prostitute."

9. DIVORCE.— The law regards with indulgence the outbursts of resentful language from a woman who is unjustly charged with want of chastity by her husband.

10. SAME.— When a suit for divorce by a wife is based in part on the alleged cruel and outrageous conduct of the husband in filing a bill for divorce

o

against her in another state, in which he charged her with unchastity, and on the trial the defendant introduced no evidence in support of such charges, the filing of the bill may be presumed to have been maliciously done, especially when it was shown that in conversations with third parties he indulged in the same charge against his wife.

11. DIVORCE.— The public aspersion of a virtuous wife by her husband, charging her with unchastity, constitutes such cruelty as will entitle her to a divorce.

12. SAME.— See opinion for facts under which it was held that a divorce was properly granted.

APPEAL from Camp. Tried below before the Hon. B. T. Estes.

Suit in the district court of Camp county against appellant for a divorce from the bands of matrimony and for the custody of a child, born of the marriage with appellant.

Appellee alleged her residence and citizenship in Camp county for more than six months next preceding the institution of the suit, and that defendant was a resident citizen of the city, county and state of New York. As ground of divorce, the plaintiff alleged cruel treatment toward her by appellant in failing to furnish or provide her with sufficient support, earned by his own exertions, and, with imputing to her a want of chastity, and with having denied the paternity of her child. Citation was issued and served upon appellant in the city of New York.

December 1, 1882, appellant appeared, and, protesting that the court had no jurisdiction over him, moved to quash the service because the petition and return were defective. He also pleaded in abatement that he was a citizen of New York, that he had no property in Texas, that no process had been served upon him in Texas, and that the supreme court of the city and county of New York had jurisdiction over his person and the subject matter of this suit. Appellant, also filed general and special exceptions and a general denial.

On December 2, 1882, appellee filed her first amended original petition, alleging that she was a *bona fide* inhabitant and citizen of the state of Texas, and that she resided in Camp county, and had resided there continuously for more than six months next preceding the institution of this suit, and that appellant was a citizen of the state of New York and county of New York. That the parties were lawfully married in New York on the 15th of June, 1875; that she at all times demeaned herself as became a true and faithful wife, but that appellant's conduct towards appellee was cruel and suspicious; that he passed his time in idleness and vagrancy, and depended for the support of himself and family upon the bounty of

his parents and the parents of appellee; that from the time of their marriage appellant constantly outraged her feelings by charging her with unchastity, and, without any cause, accusing her of making assignations with men of whom she had no knowledge. She averred that she had not been guilty of the least impropriety.

Appellee averred that the appellant's conduct towards her rendered her living with him intolerable, and that in February, 1877, she left him and lived with her parents until November, 1877, when she returned and lived with appellant until May, 1878, when she again left him and returned to her parents; that during the time they last lived together he pursued the same course of cruel treatment towards her, constantly impeaching her chastity and living in dependence and idleness; that in August, 1877, there was born of said marriage a male child, which from its birth has been in the custody and care of appellee; that appellant has contributed nothing to the support of the child, and had, to appellee, denied its paternity. Appellee alleged that since the last separation, in May, 1878, she had had no communication with appellant; had lived apart from him, and that he had contributed nothing to the support of herself or child.

She averred that on the 13th of March, 1882, appellant filed in the supreme court of the city and county of New York and state of New York, his complaint against her, verified by his oath, praying for a divorce and for the custody of their child; in that complaint appellant charges appellee with two separate acts of adultery with unknown persons, alleged to have been committed on the 16th and 22d days of June, 1881. Appellant, at the date of the institution of that suit, was residing in Camp county, Texas, and that said accusations were false and untrue, and that her conduct at no time furnished the slightest pretext for such charges.

She further alleges that on the 23d day of April, 1882, appellant was in Pittsburg, Camp county, Texas, and on that day, and in conversation with Louis Flatau, appellant, in speaking of appellee, denounced her as a whore and a prostitute, and, speaking of the child, mentioned it as "that thing," and said that he did not know whether he was its father; that he did not care for the child, and that his only object and purpose in seeking its custody was to harass and distress its mother.

She avers that by reason of said false and outrageous charges against her reputation, her return to or longer living with appellant is rendered insupportable. Appellee reaffirms her innocence; that appellant has no business, property or income from which to support

the child; that she was able to educate and maintain the child, if permitted to do so.

She prays for a divorce and for the custody of the child. To this petition appellee made oath that all charges of unchastity made against her were false.

A certified copy of the complaint filed by appellant against appellee, and duly verified, was made an exhibit to the petition.

December 6, 1882, appellant filed his first amended original answer, still protesting that the court had no jurisdiction, and reserving all legal objections made in the original answer; that he was and had been for years a resident citizen of the city and state of New York; that he had no effects in Texas; that no process had been served upon him in Texas, as a transient person or otherwise. This answer was sworn to before the district clerk of Camp county by appellant.

He further avers that at the date of the institution of this suit appellee's domicile and residence was, in law, in the state of New York. This is also sworn to before the clerk of the district court of Camp county.

Appellant filed a general demurrer and special exceptions, and answered by general denial.

His exceptions to the petition, motion to quash the service, and his plea to the jurisdiction, were by the court overruled.

Appellant charged that appellee, at the time of instituting her suit, was not a *bona fide* inhabitant of the state of Texas; that she left New York the last of 1881 or first of 1882, secretly, to avoid the service of legal process and the writ of *habeas corpus* in a suit instituted by appellant to obtain the custody of the child; that appellee had no legal excuse for leaving New York.

The jury returned the following verdict: " We, the jury, find that the allegations in plaintiff's petition are true. This May 9, 1883."

Judgment dissolving the marriage, and awarding the custody of the child to appellee.

*White & Plowman*, for appellant.

*J. L. Henry*, also for appellant.

*W. P. McLean* and *Crawford & Crawford*, for appellee.

WILLIE, CHIEF JUSTICE.— The assignments of error in this cause are sixty-seven in number, of which fifty-five are relied on for a

reversal of the judgment. We shall consider only such as we deem of any importance, passing by without notice all such as are either not supported by the record or present points unnecessary to be considered.

We think the service upon defendant, and the return of the same, are sufficient under our Revised Statutes. These statutes are not to be construed strictly as in derogation of the common law, but liberally, and with a view to effect their objects and promote justice. The object of arts. 1230 to 1233 of the Revised Statutes was to provide for an easier and less expensive method of effecting service on non-residents than by publication, and at the same time to make it certain that the defendant has full notice of the suit. To carry out these objects we must give the statute a liberal construction, disregard technicalities, and supply by intendment what the law, in other cases, would presume had been done. The defendant was a non-resident, and this authorized the service. The application for the notice will be presumed when it has issued, and especially when it has been asked in the petition. It is also a fair presumption that the party making the service is competent and disinterested until the contrary is proved, and the signature and seal of the officer to the jurat, as made in the present case, is as full and complete a certificate as is required by the statute.

As to the jurisdiction, it is doubtless a general rule that the wife's domicile is the same with that of her husband. When, however, the law authorizes a suit for a divorce by the wife, and makes the jurisdiction depend upon her residence, as does our statute (R. S., 2862; id., 1198), the provision would be idle if her domicile is of necessity to be the domicile of her husband. It would be, in effect, to allow the wife to sue her husband at the place of his residence — a privilege she has without any such provision. The plaintiff here alleges that she is a *bona fide* inhabitant of Camp county, where the suit was brought, and had been so continuously for six months before the commencement of this action. The *bona fides* of her residence depended upon whether or not she had sufficient grounds for leaving her husband, and had taken up her residence in Camp county, not solely for the purpose of suing her husband for a divorce, but with the intention of making that county her permanent home. We think that all such facts are fully stated in the petition, and the court had jurisdiction of the cause.

The plaintiff being a *bona fide* resident of the county of Camp, the state of Texas had the right to pass upon questions affecting the continuance of the marital relation between the parties, no matter

where the offenses for which the divorce was sought had been committed. This is too well settled by authority to require argument in support of it. Cooley on Const. Lim., 400, 401; 2 Bishop on Mar. & Div., §§ 171, 172; Ditson v. Ditson, 4 R. I., 87; Cheever v. Wilson, 9 Wall., 123.

Decisions to the contrary may be found in some states, but as a general rule it is owing to the existence of some statute with provisions to the contrary. Any others are against the weight of authority, such as Edwards v. Green, 9 La. Ann., 317, cited by appellant's counsel.

We have no clause in our statutes varying the general principle established by the weight of authority, and in accordance with it we think our district courts can decree divorces for causes arising outside the limits of the state. Besides, one of the acts for which this divorce is sought, and an act entirely sufficient to authorize it, was committed in the state of Texas after the plaintiff became a resident here.

Special demurrers Nos. 6 and 20 were properly overruled. Without reference to any other acts of cruelty, the two charged to have occurred since the appellee has been residing in Texas are sufficiently alleged to require that those exceptions should be overruled.

We believe, also, that there is nothing in the exceptions taken to the manner of alleging the acts of cruelty committed between November, 1877, and May, 1878. The petition charged a continued course of wrongs, excesses and cruelties extending over a long period of time, viz., five months, which finally culminated in acts of outrage, which were specified with all possible particularity. It is not improper to include in a petition for divorce general charges of cruelty, and follow them by allegations of one or more specific acts which may or may not be included in the general charge. 2 Bish., §§ 651, 648a; Whispell v. Whispell, 4 Barb., 218. And in accordance with this rule are the forms in the English ecclesiastical court. 2 Bish., § 650. This latter author says that good pleading requires that the libel, in addition to the special charges, should contain proper general ones under which to prove general conduct, temper, and the like. 2 Bish., § 652. And our own court in Wright v. Wright, 3 Tex., 182, seems to recognize the same rule as to general allegations; and in same case, at page 181, seems to consider averments of a course of misconduct from which outrages might be inferred to be sufficient for some purposes.

But may it not be said that these acts are averred with sufficient certainty for divorce pleading? Mr. Bishop says that such pleading

is somewhat different from what is used in ordinary cases. It certainly is not required that the acts should be averred with the certainty of an indictment. The forms used in the English courts and in some of those in the United States do not allege the precise day and place of the occurrence of the acts. The place is scarcely ever alleged and the time no more certain than by reference to the month of the occurrence. 2 Bish., § 650a; Smedly v. Smedly, 30 Ala., 714; Beebe v. Beebe, 10 Iowa, 133; 19 id., 34; 13 id., 266.

Our own court, in Wright v. Wright, 6 Tex., 3, considered an act of cruelty sufficiently specific that gave the month when it happened without mentioning the place where it happened. The object of the pleading is to give the defendant notice of the charges he will be called upon to meet, and we think that object was accomplished in the present case. The time was between the last of November and the first of May, and the defendant could not mistake as to the place where events occurring during that time must have taken place.

We are of opinion that, taking into consideration the manner in which the acts committed between November 29, 1877, and May, 1878, are alleged, and the fact that the subsequent outrages are specified with great particularity, the demurrers to these allegations were properly overruled; that these allegations, taken in connection with the averment of domicile, gave the court jurisdiction, if proved, and rendered the acts of cruelty alleged to have been committed subsequently, good grounds of divorce. See Wood v. Wood, 5 Iredell, L. R., 674. And holding as we do upon this subject, it necessarily follows that the court did not err in admitting relevant testimony under these allegations, and in submitting issues upon them to the jury. This disposes of all assignments of error upon such rulings of the court below.

The nineteenth assignment of error is not supported by the record, as acts of cruelty are alleged to have occurred after the reconciliation of February, 1877, and before the final separation in May, 1878, which were followed by greater outrages, committed subsequent to the last-mentioned date.

There was no error in overruling special demurrer 16. The exhibit made part of the petition shows that the New York bill of divorce was sworn to before a notary public of that state, and the presumption is that he had authority to take the affidavit. The same presumption exists in favor of the jurisdiction of the court in which the bill was filed. If the officer had not authority to administer oaths, or the court jurisdiction, the defendant should have

so alleged and supported his allegation by proof. Besides, we see no necessity for proving that the bill was sworn to. Allegations of the character which it contains, made by a husband against his wife, are acts of cruelty whether sworn to or not.

Nor was it improper to attach a copy of the bill to the petition. It constituted, in part, the cause of action, and was in aid and explanation of the allegations of the plaintiff, which had been fully made in the petition itself. Rule 19 for District Courts.

The affidavit attached to the petition was read to the jury not as evidence, but as pleading. No exception had been made to it, and pleadings, whether good or bad, on demurrer, may be read to the jury as such if they have not been stricken out on proper exceptions.

As to all assignments which set up condonation it is sufficient to say that the reconciliation of November, 1877, did not bar suit based upon the precedent outrages, the ill-treatment having been renewed whilst the parties were subsequently living together, and again by acts of cruelty occurring since the plaintiff became a citizen of Texas. Wright v. Wright, 6 Tex., 3; Nogees v. Nogees, 7 Tex., 538.

The evidence of Flatau was to particular language used by appellant, which amounted, in substance, to what that language was charged to be in the petition, and this was sufficient and did not amount to a variance. The evidence of Byles was admissible as being in proof of specific acts, which, though not specifically alleged, could be received as explanatory of those averred and as giving weight to them. 2 Bish., § 658; David v. David, 27 Ala., 222, 224.

There was sufficient to authorize the jury under special issue No. 3 to find for the plaintiff. The facts set forth in appellant's brief as showing improper conduct on the part of Mrs. Jones are of the most trivial character. The proof was abundant to show that she had suffered wrongs at his hands which in a great measure palliated, if they did not entirely excuse, any slight offenses she may have committed. The evidence is somewhat conflicting, but there is abundant proof in the record to show that the husband's conduct was such as to drive his wife to commit every apparent offense he has proven against her, including even her final abandonment. See Sheffield v. Sheffield, 3 Tex., 79.

Admitting that there was proof to show that defendant contributed towards the support of his wife, and that the finding of the jury was against the evidence on the fourth issue, there was sufficient in the verdict upon the other issues, if supported by proof, to

justify the divorce. If the jury had found for the defendant on this particular issue, and for the plaintiff upon the others, the court should, nevertheless, have entered a decree in accordance with the prayer of the petition.

What we have heretofore said on the subject of general and special allegations is sufficient to dispose of the forty-fourth assignment of error so far as special issue No. 6 is concerned. It was not necessary to prove every single charge alleged in the petition to have been made against plaintiff by her husband during their married life, and previous to their final separation. Proof that he had accused her of unchastity was sufficient for the purposes for which the allegation on that subject was made in the petition.

As to the fourth and fifth charges asked by appellant and refused by the court, they had been substantially given so far as they were good law in submitting special issue No. 3, which we have already considered. The principles contained in these charges, however praiseworthy in connubial ethics, cannot be laid down to their full extent as correct rules of law governing in cases like the present. The law looks with much indulgence upon the conduct of a woman who is unjustly charged by her husband with the highest offense she can commit against his conjugal rights, and excuses any outbursts of resentment on her part under such accusations. Mayhugh v. Mayhugh, 7 B. Mon., 429.

The very section of the book quoted in support of these instructions says, in effect, that though the ill conduct of the wife has contributed in a measure to what she complains of in her husband, still, if the latter was very aggravated, it is good ground for granting her a divorce. § 768. The charges asked were inconsistent with this principle and were rightly refused.

The forty-sixth and fiftieth assignments of error which are directed to the charge on the subject of the New York bill of divorce are not well taken. If this bill was filed without any grounds for so doing, and under the circumstances proven on the trial, it was maliciously done. The defendant introduced no proof whatever to sustain the charges made in the bill, nor in palliation of his conduct in bringing the suit, and hence the inference that it was maliciously done was irresistible. It was not necessary to prove malice more express than was to be gathered from the antecedent conduct of the husband, and the feeling he displayed against her in his conversations with other persons.

The remaining assignments and propositions, which are of any importance, may be considered together, as they refer to the insuf-

ficiency of the evidence to support the verdict, or to justify the remaining charges given by the court.

Enough of the facts alleged in the petition were substantially proved to authorize the verdict of the jury and the decree of divorce. The charges as to the idleness of the defendant and his failure to support his wife were not very satisfactorily proven, nor do we deem them important.

It was fully proven, however, that the appellant stated to his wife that he did not believe he was the father of her child born during the marriage. This was in effect to accuse her of adultery, and of being the mother of an illegitimate child. It was also proven that he filed against her in the courts of New York a bill praying for divorce, in which he alleged that she had committed two distinct acts of adultery at specified times, at a particular place, and with unknown men. It was further shown that he stated to one of the residents of the place where she lived, after her removal to Texas, that she was guilty of the most enormous offenses against decency, virtue and her marriage vows. The language used is too foul to repeat in a judicial opinion. It shocks the sensibilities of every decent person, and includes charges which no innocent woman could survive except in perpetual anguish. Not one spark of evidence is introduced by appellant to contradict these proofs against him, and he brings no testimony even of the slightest character to throw a suspicion upon the virtue of his wife, much less to establish these grave offenses laid by him to her charge.

Such outrages are good grounds for divorce in our state. Our statute differs from those of a majority of the states in respect to the cruel treatment which will authorize a divorce. It does not confine such treatment to bodily harm, or threats of the same, and properly includes within the meaning of " excesses, cruel treatment and outrages," insults or injuries to the mind or the heart. In some of the states it is not ordinarily deemed sufficient cause for divorce that the husband should have accused his wife of unchastity, but as an act of gross cruelty almost enough of itself for that purpose. 1 Bishop on Mar. and Div., § 726. Our courts, under the peculiar wording of our statute, hold it not *almost* but *altogether* a sufficient act of cruelty to justify dissolving the bonds of matrimony. Pinkard *v.* Pinkard, 14 Tex., 356; Schreck *v.* Schreck, 32 Tex., 579; Sheffield *v.* Sheffield, 3 Tex., 79.

And why should it not be so held? What are wounds to the person as compared with those that affect the mind? The former may be healed; the latter endure for a life-time. Of all the treasures

cherished by a woman, her reputation for chastity is the dearest. "It is the immediate jewel of her soul;" and, when an attempt is made by her husband, who should be her protector, to rob her of it, cruelty on his part has reached its utmost limit. He not only destroys her peace of mind, but exposes her to the contempt of the world and the insults and assaults of the worst of mankind.

But it is urged that the mere charge of adultery contained in a bill of divorce, filed in another state, is not sufficient to authorize a divorce; and a *dictum* of Judge Lipscomb is cited to sustain this point. Simons *v.* Simons, 13 Tex., 475.

Were this the only ground upon which the present divorce is sought, it might be necessary for us to consider whether or not this *dictum* is good law. But here the charge is not only made in the bill of divorce, but is followed up by public aspersions of the wife's character, denouncing her not only as an adulteress, but as having reached, if possible, a still lower degree of female depravity. In such case it is strongly intimated in the opinion of the same learned judge that good ground for divorce would be presented. See, also, Wright *v.* Wright, 6 Tex., 3, and Sharman *v.* Sharman, 18 Tex., 526. In the latter case, such conduct is characterized as "an outrage to the feelings of the wife, and cruelty of the most base and aggravated character; inconsistent with the matrimonial relation, its obligations, its duties and affections."

We think the charges of adultery brought against the wife, when taken together and in connection with the remainder of the evidence, showing the complete and utter want of the least grounds for making them, were sufficient to require the decree of divorce rendered by the court.

As to the question of recrimination, we think it scarcely deserves notice. Recrimination is a valid defense when the recriminatory fact is of a like character with the act of the defendant for which the divorce is sought, or when the difference between the offense of the plaintiff and that of the defendant is merely slight in degree of guilt. But some allowance must be made for human frailty, and the plaintiff must not be required to be without fault, in order to obtain a divorce for the defendant's great wrong. This is what was held by Judge Moore in Hale *v.* Hale, 47 Tex., 336, and is a correct exposition of the law on the subject. Here the faults alleged against the plaintiff were "trifles light as air" compared to the unbounded wrongs heaped upon her by the defendant, and we do not think such recrimination was established as could avail him as a defense.

From what has been said, it is clear that all points made upon the sufficiency of the proof to warrant the charges of the judge below, or to establish the jurisdiction, must be decided against the appellant.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered December 4, 1883.]