## EIKENBURY v. EIKENBURY ET AL.

[No. 4,631.   Filed April 20, 1904.]

DIVORCE.—*Both Parties Guilty of Matrimonial Offenses.*—A party guilty of adultery is not entitled to a divorce on the ground of abandonment. *pp. 70–75.*

SAME.—*Examination of Plaintiff by the Judge.*—It is the duty of the trial judge, in a divorce proceeding in which the defendant does not appear, to elicit facts as to matrimonial offenses committed by plaintiff, and grant or withhold a decree accordingly. *pp. 70–75.*

From Wells Circuit Court; *E. C. Vaughn*, Judge.

Suit by Josephine Eikenbury against Charles Eikenbury for divorce. From a judgment denying the divorce, plaintiff appeals. *Affirmed.*

*Levi Mock, John Mock* and *George Mock,* for appellant.

ROBINSON, J.—Appellant sued for divorce, averring in her petition, filed in September, 1901, that appellee, without cause, had abandoned appellant for more than two years, that he had failed to provide for appellant and their child for more than two years, and had been guilty of cruel and inhuman treatment. Notice was given appellee by publication, and after he was defaulted the prosecuting attorney was ruled to answer the complaint. The record does not show that any answer was filed, but the prosecutor appeared when the cause was submitted for trial. Upon the trial, in December, 1901, the residence of appellant was proved as the statute requires. Appellant testified that she was twenty-six years old, and was married to appellee in 1895; that they lived together until May, 1899, and that she had not lived or cohabited with him since that time; that he left her, and said nothing when he left; that she had not seen him since he left, and that the last she heard from him he was in the Philippine Islands; that she had one child as the issue of the marriage, born Christmas, 1899; that appellee was not present at the birth of the child, and has never seen it, and has made no provision for appellant or the child since he left in May, 1899. In answer to questions by the court, she testified that her husband never wrote to her except in answer to her letters asking for money; that he never sent her any money; and that he gave her no reason for leaving. Appellant then rested her case, which was by the court continued for further hearing until the next term. On May 10, 1902, at the April term, appellant and her counsel and the prosecuting attorney being present, appellant, at the request of the court, was recalled, and asked by the court whether

she and a man named were not then living together as husband and wife, and whether she was not then pregnant, all of which she denied. Afterward, on September 29, 1902, at the September term, the case was called for further hearing, and, as a part of the testimony in the case, it was admitted in open court by counsel for appellant "that the plaintiff had been delivered of a child which was yet living, and that said child was born after the 10th day of May, 1902, and before July 1, 1902." The court denied appellant's petition, and rendered judgment against her for costs. To the questions asked appellant by the court, objection was made at the time on the ground that they were irrelevant, immaterial, not cross-examination, and not within the issues; there being no pleadings filed charging appellant with adultery. For the action of the court in asking appellant these questions, and that the decision of the court is not sustained by sufficient evidence and is contrary to law, a new trial was asked, which was overruled, and this ruling is assigned as error.

Marriage is not a civil contract, except in so far as the relation is based upon the agreement of the parties. It is true the statute (§7289 Burns 1901) declares marriage to be a civil contract, but the statute itself takes it out of the class of civil contracts by providing that it may be entered into by persons under age. The agreement to marry partakes of the nature of a civil contract, as upon its violation the injured party may recover damages. But the contract or agreement to marry and the marriage relation itself are by no means one and the same. When the agreement to marry has been executed in a legal marriage, the relation thus formed becomes much more than a mere civil contract. The rights and duties incident to this relation are from a source much higher than any contract of which the parties are capable, and can neither be restricted nor enlarged, nor in any way controlled by any contract which the parties can make. The marriage executed, reg-

ulated as it is by law upon principles of public policy, is
an institution of society in which the State is deeply con-
cerned. The State itself regulates it because the State has
an interest in maintaining the family relation. "In every
enlightened government," said the court in *Noel* v. *Ewing*,
9 Ind. 37, "it is preëminently the basis of civil institutions,
and thus an object of the deepest public concern. \* \* \*
It is not a mere matter of pecuniary consideration. It is a
great public institution, giving character to our whole civil
polity." *Watkins* v. *Watkins*, 125 Ind. 163, 21 Am. St.
217, and cases cited; *Hood* v. *State*, 56 Ind. 263, 26 Am.
Rep. 21; *Maynard* v. *Hill*, 125 U. S. 190, 210, 31 L. Ed.
654, 8 Sup. Ct. 723; Cooley, Const. Lim. (6th ed.), 128;
Story, Conflict of Laws (8th ed.), §108 *et seq.*; *Rugh* v.
*Ottenheimer*, 6 Ore. 231, 25 Am. Rep. 513; *Wade* v. *Kalb-
fleisch*, 58 N. Y. 282, 17 Am. Rep. 250; *Adams* v. *Palmer*,
51 Me. 480.

And because marriage is declared to be a civil contract
it does not follow that a suit for divorce should be consid-
ered in the light of a civil action merely. It is a civil
action in so far as the divorce act in itself fails to prescribe
rules of procedure. If the divorce act is to be made effect-
ive, resort must be had to the civil code. But in so far
only as recourse must be had to the rules of civil procedure
is it a civil action. *Powell* v. *Powell*, 104 Ind. 18.

As the marriage relation is of public concern, so divorce
is of public concern. Public policy, good morals, the inter-
ests of society, all require that divorces shall be discour-
aged by the law, and that reconciliation should be effected if
practicable or possible. The policy of the law in all Chris-
tian countries has been against divorce, except for adultery.
The doctrines of the ecclesiastical courts which orig-
inally had jurisdiction in divorce cases is yet recognized
in some states so far as they are applicable and not in con-
flict with constitutional or statutory provisions or the gen-
eral spirit of the laws. *Wuest* v. *Wuest*, 17 Nev. 217, 30

Pac. 886; *Nogees* v. *Nogees,* 7 Tex. 538, 58 Am. Dec. 78; *J. G.* v. *H. G.,* 33 Md. 401, 3 Am. Rep. 183; *Bauman* v. *Bauman,* 18 Ark. 320, 68 Am. Dec. 171; *Jeans* v. *Jeans,* 2 Har. (Del.) 38. The legislature declares the reasons for which divorces may be granted, and a party within the statute should be granted the relief there given. And while a divorce statute should not be construed in a spirit of improper liberality, nor with a view to defeat its ends, yet it should be construed strictly. All legislation upon the subject is based upon the idea that the marriage is indissoluble except for cause shown, and of the sufficiency of the cause the parties are not themselves to determine. Any tendency to regard marriage as a mere temporary arrangement of conscience, to be terminated upon some slight pretext through some formal proceeding, should be effectively disapproved in the interest of sound morals and public decency. Those who look upon marriage, as to its continuance and dissolution, as a contract merely, have wholly failed to appreciate this most important of all social institutions. Nor should they be led to believe that if marriages are entered into, and they result in mismated and unhappy couples, the parties may have the relation terminated in some back-stairs, semisecret proceeding, accelerated, perhaps, by a waiver of process, and in which little else is done than judicially ratify an agreement previously made by the discontented parties.

The matter of divorce is not one of private concern merely. When appellant filed her petition, three parties became interested—the husband, the wife, and the State. In certain divorce cases the law requires an appearance by a public officer, because of the interest the State has in preserving the purity of the institution of marriage. The trial judge, in the fullest sense, represents the State when asked to dissolve the marriage relation. He has the right to know, not simply whether one party has broken a contract made with another, but he has the right to inquire

of the parties themselves, the manner in which they have observed toward each other and the community in which they lived the obligations required of them by the State, and the motives prompting them in seeking a separation. He is asked to grant a remedy provided for an innocent party who has been wronged by the other. If both parties are equally guilty, he has the right to know it, because, if that be the fact, a decree of divorce should be denied.

The evidence of appellant as to abandonment shows the husband wholly unfit to be a husband, and this evidence, with the admission made, shows appellant guilty of a matrimonial offense and wholly unfit to be a wife. In *Alexander* v. *Alexander,* 140 Ind. 555, the court quotes the following from Brown on Divorce: "Where each of the married parties has commited a matrimonial offense, which is a cause for divorce, so that when one asks for this remedy, the other is equally entitled to the same, whether the offenses are the same or not, the court can grant the prayer of neither." The statute of this State provides that a party guilty of adultery can not obtain a divorce on the ground of adultery. §1045 Burns 1901. And upon the authority of *Alexander* v. *Alexander, supra,* a party guilty of adultery should not be granted a divorce on the ground of abandonment. The record shows appellant guilty of conduct that would be ground for divorce, and in such a case the court, on its own motion, should apply the principles of recrimination. And from the nature of the relation the trial judge was asked to dissolve, and the character of the remedy he was asked to grant, he not only had the right, but, representing the State, an interested party, it was his duty to elicit the facts, and to grant or withhold a decree accordingly. See *Mattox* v. *Mattox,* 2 Ohio 233, 15 Am. Dec. 547; *Pierce* v. *Pierce,* 3 Pick. 299, 15 Am. Dec. 210; *Christianberry* v. *Christianberry,* 3 Blackf. 202, 25 Am. Dec. 96; *Armstrong* v. *Armstrong,* 27 Ind. 186; *Scott* v. *Scott,* 17 Ind. 309; *Hale* v. *Hale,* 47 Tex. 336, 26 Am.

Rep. 294; *Wood* v. *Wood,* 2 Paige 108; *Conant* v. *Conant,* 10 Cal. 249, 70 Am. Dec. 717; *Smith* v. *Smith,* 4 Paige 432, 27 Am. Dec. 75; *Moores* v. *Moores,* 16 N. J. Eq. 275; *Knight* v. *Knight,* 31 Iowa 451; Stewart, Mar. & Div., §314; *Ribet* v. *Ribet,* 39 Ala. 348; *Wass* v. *Wass,* 41 W. Va. 126.

Judgment affirmed.