RAUCH v. RAUCH. (No. 8112.)

(Court of Civil Appeals of Texas. Galveston. Jan. 27, 1922.)

1. Divorce ⟨⟩184(6)—Where testimony conflicted on matters of fact, determination of trial court binding on appeal.

In an action for divorce, where there was conflict in the testimony relating to matters the trial court had authority to resolve, its determination is binding on appeal.

2. Divorce ⟨⟩51—Breach of conditions on which condonation based revived original offense.

Where the acts from which it was claimed condonation arose were elicited by promises of the wife that there would be no repetition of the conduct to which they had relation, a breach of the condition on which the acts of forgiveness were based revived the original offenses.

3. Divorce ⟨⟩197—Denial of attorney's fees to wife, unsuccessfully seeking divorce on cross-action, not error.

Where, on cross-action, a wife sought divorce on grounds in which she was unsuccessful, denial of attorney's fees to her was not error.

4. Husband and wife ⟨⟩266—Borrowing from husband's separate funds for community needs and repaying from community funds held not to change character of separate funds.

In an action for divorce, where it was shown that the husband had $4,833 of his separate funds, and from time to time borrowed from his funds for community needs, and afterwards replaced the money out of community funds, notwithstanding the presumption as to community property, under Rev. St. art. 4623, such methods did not change the character of his separate funds.

Appeal from District Court, Fayette County; M. C. Jeffrey, Judge.

Action for divorce by Mat Rauch against Anna Ryan Rauch. From a decree for plaintiff, and the allowance to defendant out of the community property, both parties appeal. Affirmed.

Edw. H. Moss, of La Grange, for plaintiff. L. D. Brown, of La Grange, for defendant.

GRAVES, J. In this proceeding the husband sued the wife for divorce upon the ground of cruel treatment, alleged to have consisted of a series of studied vexations, deliberate insults, and provocations in the form of opprobrious epithets and false accusations against himself and members of his family, applied so constantly and so nearly continuously throughout the brief three-year span of their married life, as to make their continuing longer as husband and wife insupportable.

The wife denied the allegations and countered with a cross-action, charging that plaintiff had so constantly abused her sexually as to completely undermine her normal good health, had then refused to provide for necessary means and medical treatment to restore her, and with the intent to humiliate and distress her, as well as to further destroy her health, had filed this suit against her, setting forth therein false and malicious accusations, calculated to shame and humiliate her; that such conduct and acts upon his part amounted to such cruel and unusual treatment as entitled her to a divorce, for which she prayed. It is not deemed essential that further details of pleadings so mutually accusatory be here recorded.

The defendant further averred that during their married life community property had come into existence, all of which was in

plaintiff's possession, and she asked for an accounting and division of it between them, for alimony pending the suit, and for $500 attorney's fees. By way of supplemental answer, in reply to plaintiff's amended petition, she alleged that plaintiff had condoned all acts and wrongs set up by him, and that up to the 15th day of September, 1919, had lived with her in all respects of wedlock, filing his suit for divorce on the next day. These supplemental matters were denied by the plaintiff in an answering petition, in which he also pleaded that anything he had done even looking toward forgiveness or condonation had been done upon promises of the defendant to treat him as a wife should her husband, all of which she had not only failed to keep, but that on September 15, 1919, on the Market Square in Houston, she had again called him all sorts of vile and ugly names, at the same time threatening to get a pistol and kill him.

The trial before the court without a jury resulted in a judgment granting plaintiff a divorce, refusing defendant's cross-claim for a divorce, as well as her application for attorney's fees, but awarding her, along with a few other small items of like character, a recovery of $330 for one-half the value of what the court found to be community property between them; $300 of this was for one-half of 10 salary checks, for $60 each, earned and deposited in bank by plaintiff during the marriage relation, and $14 of it represented one-half the interest earned during that time on a separately owned note of his for $350.

Both parties complain upon appeal; the defendant, as appellant, of each feature of the judgment, and the plaintiff, through cross-assignments, of that part decreeing the defendant the one-half of the salary and interest items just referred to, as out of community property. We are unable to hold there was reversible error affecting either party, and order an affirmance.

[1] Appellant's contention that the evidence showed condonation on his part of all grounds for divorce set forth in the appellee's pleadings, in that there was proven such habitual indulgence in the use of obscene language between them during practically the whole period of their married life, while at the same time engaging in conjugal embraces and relations, as to amount to a license to use such language, and that consequently it could not constitute the cruel treatment for which our statute permits a divorce, is not thought to be sustained. There was merely such conflict in the testimony relating to these matters as the trial court had the authority to resolve. The determination of it there is therefore binding upon this court.

[2] For instance, there was ample direct testimony to support findings, not only that the acts and attitudes from which it is claimed condonation arose were elicited by promises and assurances from the wife that there would in the future be no repetition of the conduct to which they had relation, but also that they were as consistently violated as made by her. In these circumstances— that is, a breach of the condition on which the acts of forgiveness were based—we understand there would be a revival of the original offense. Nogees v. Nogees, 7 Tex. 538, 58 Am. Dec. 78; Parker v. Parker, 204 S. W. 493; Bingham v. Bingham, 149 S. W. 214; Womble v. Womble, 152 S. W. 473; Dickerson v. Dickerson, 207 S. W. 941.

Moreover, appellant made no attempt to prove that appellee did or said anything tending toward a remission of the particular reiteration of prior offenses in that regard; he charged and pointedly swore she visited on him in Houston on September 15, 1919; she simply denied that any such occurrence took place. If it did, as the trial court was not without authority to find, the further conclusion that it was never condoned might have been, and probably was, drawn as resting upon uncontradicted testimony.

[3] Under the facts here, the denial of attorney's fees to the wife did not constitute error; she sought a divorce on a cross-action, in which she was unsuccessful, the court holding that she had no sufficient grounds. Hill v. Hill, 125 S. W. 91; Yeager v. Bradley, 226 S. W. 1079.

[4] The finding and the consequent division as to community property made below is not thought to be successfully attacked by either party. It is undisputed that at the date of the marriage, December 13, 1916, appellee was possessed of separate property of the value of $3,500; that some time later, and during the existence of that relation, he received funds of like character from his mother's estate in the sum of $1,333; that the aggregate of these, $4,833, was deposited by him in different amounts to his individual and separate account in two banks, the First National and the Schuhmaker State, at La Grange, Tex.; that the character of both of these accounts remained unchanged, though the amounts of credits varied, from the time of their establishment at or early after the marriage until the date of this trial in the court below, at which time he had on deposit in the Schuhmaker bank $3,038.94, and in the First National $10.84.

The appellant contends that there was throughout the period of their married life such a commingling of these admittedly separate funds of her husband with those of the community as to destroy their identity as such, and convert them into common property, citing in support of the claim article 4623 of our Revised Statutes, Speer on Marital

Rights, §§ 307–310, 336, 372, 516, Edelstein v. Brown, 95 S. W. 1126, Robb v. Robb, 41 S. W. 92, and Moor v. Moor, 24 Tex. Civ. App. 150, 57 S. W. 992.

The course of business shown, however, was that appellee would borrow from his separate accounts thus in bank for community needs and afterwards replace the money out of community funds. The evidence, we think, was sufficient to account on this basis for the handling of all money and property involved, except those specific items found by the trial court to constitute common property. Such method and process would not, in our opinion, have the legal effect of changing the character of the funds in bank, but they would still remain the separate property of the husband. Rose v. Houston, 11 Tex. 324, 62 Am. Dec. 478; Chapman v. Allen, 15 Tex. 278; Montgomery v. Brown, 1 White & W. Civ. Cas. Ct. App. § 1303; Schuster v. Bauman Jewelry Co., 79 Tex. 179, 15 S. W. 259, 23 Am. St. Rep. 327; Schmidt v. Huppmann, 73 Tex. 112, 11 S. W. 175; Aultman Miller & Co. v. George, 12 Tex. Civ. App. 457, 34 S. W. 652; Cabell v. Menczer (Tex.) 35 S. W. 206; Kingman-Texas Imp. Co. v. Herring National Bank, 153 S. W. 398; Speer on Married Women, §§ 223 and 231; Schneider & Co. v. Fowler, 1 White & W. Civ. Cas. Ct. App. § 856.

As to the salary and interest items to which the cross-assignments relate, we think the evidence sufficiently shows these to have been when banked, and to have remained, community gains, and not replacements of moneys borrowed from the separate estate of the husband.

From these conclusions, it follows that all assignments of both parties should be overruled, and the judgment affirmed; that order has been ordered. ,

Affirmed.