## DAI CHOW CHANG *v.* YIT PING CHANG.

### No. 1792.

ARGUED MARCH 16, 1928.            DECIDED MARCH 28, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PARSONS, J.

This case is before us upon appeal from a decree of the judge of the division of domestic relations of the first circuit court denying a libel for a divorce. The ground relied upon in the libel is extreme cruelty alleged to have been committed as follows: "(a) for many months past the libellee has continually nagged, scolded and abused the libellant to such an extent as to affect his health, in that such conduct on the part of the libellee has produced a highly overwrought condition of the nervous system of the libellant; and (b) on Sunday, July 10, 1927, in a fit of rage, the libellee repeatedly slammed pieces of chinaware against the head, body, arms and hands of the libellant, severely bruising him and causing blood to flow."

At the hearing no impairment of the husband's health was shown to have been caused by the acts of the wife and the judge found the proof insufficient to support the allegations of paragraph (a). He also held in effect that the proof introduced in support of the allegations of paragraph (b) did not show a commission by the wife of acts amounting to extreme cruelty as contemplated by statute. Libellant admits in his opening brief that he "did not and does not press the charge of extreme cruelty occasioned by a course of continual nagging, scolding and abuse on the part of his wife." This leaves for our consideration the evidence and the conclusions to be drawn therefrom with reference to the acts averred in paragraph (b).

The husband's account of what took place at the time therein alleged, was in part as follows: "On the morning of the tenth of July, 1927, my mother, my wife

and myself and baby were having breakfast at about eight o'clock in the morning. I got through breakfast first and put on my hat to go to work. On my way past the dining table I stopped to ask my wife how many eggs the chickens were laying at that time and she answered me that they were laying sometimes twenty, sometimes sixteen. I told her that eggs were scarce and not to sell any more eggs. We were selling some of the spare eggs at the time. And she answered me: 'God-damn you, what right have you got to inquire of me?' I said, 'Why do you answer me like that?' She said, 'To hell with you, I don't give a damn for you, I no scared of you.' With that she stood up with a bowl of cream of wheat which she was feeding the baby at that time, and crushed the bowl on my hat. After she did that she grabbed another bowl and slammed it on my head again. I raised my hands to protect my head. While my hands were uplifted she grabbed the third bowl and crushed it on my fingers, which in turn hit against my head; and the bowl broke in two, that is, part of it was broken off and fell to the floor; with the other half she crushed it on my fingers again, and hit my fingers and caused them to bleed." The wife denied that her attack was unprovoked and testified that her husband had struck her with his fist twice and had struck at her a third time before she hit him with the bowl.

The trial judge made no specific finding of facts as between the conflicting statements above referred to as to which party was the assailant in the first instance, nor, in the view herein expressed, is it necessary for us to do so. In any event the testimony shows no deliberate intention on the part of the wife to inflict a serious injury upon her husband. The breaking of the bowl and the cutting of the husband's fingers upon its jagged

edges, like the cutting of her own fingers, appear to have been mere unpremeditated incidents of their struggle, which at no time seriously endangered the life, limb or health of the libellant. No other attack by the wife on the husband is shown by the evidence, nor does it appear that libellant fears or has reasonable cause to fear, from continued cohabitation with his wife, bodily harm in the future.

What constitutes extreme cruelty depends so much upon the circumstances of each particular case that courts have hesitated to attempt a general definition. Some of the well-established tests are set forth in the opinion of this court by Robertson, C. J., in *de Coito* v. *de Coito*, 21 Haw. 339, 343, 344, wherein among other things it is held, as summarized in the syllabus, that "to constitute extreme cruelty there must be such violence or such a course of conduct as tends to endanger life, limb or health, or creates a reasonable apprehension of such result, thus rendering continued cohabitation unsafe."

Cases are referred to in the opinion last above cited where single instances of personal violence, in the circumstances of those particular cases, have been held to constitute legal cruelty. "Whether a single instance of such conduct should be held sufficient to justify a divorce, would depend very much on the question whether it was the result of a deliberate, fixed intention to abuse, or only a sudden passion, which the party might afterwards regret." *Pillar* v. *Pillar,* 22 Wis. 627, 628. Courts have taken other circumstances into account in determining whether or not in particular instances blows do or do not amount to legal cruelty. "As said before, no exact definition of legal cruelty can be given, for there may be cases in which mere blows should not be so considered. These may be given,

but still there may be strong affection in the party. Among persons of coarse habits they might pass for very little more than rudeness of language or manner. They might occasion no apprehension." *Nogees* v. *Nogees,* 7 Tex. 538, 58 Am. Dec. 78, 82. See also 9 R. C. L. 337, § 117; *David* v. *David,* 27 Ala. 222; *Kline* v. *Kline,* 50 Mich. 438; *Nye's Appeal,* 126 Pa. St. 341, 17 Atl. 618, 12 Am. St. Rep. 873. "The causes must be grave and weighty," (*Evans* v. *Evans,* 1 Hagg. Con. 35, 161 Eng. Repr. 466) "and show a state of personal danger incompatible with the duties of married life." *Harman* v. *Harman,* 16 Ill. 84, 90. "The principle on which the courts interfere by divorce in these cases is not so much to punish a wrong done * * * as to furnish protection * * * for the future; in other words, to prevent an apprehended harm. The proceeding is, in effect, *quia timet.* It is for safety in the future, not retribution for the past." 1 Bishop, Mar. & Div., 6 ed., Sec. 719, pp. 528, 529. See also *Morris* v. *Morris,* 14 Cal. 76, 73 Am. Dec. 615; *English* v. *English,* 27 N. J. Eq. 579.

Extreme cruelty as a ground of divorce is available in a proper case to either husband or wife, without statutory distinction. The complaint, says Lord Stowell, "generally proceeds from the wife as the weaker person—but it may come from the man, and has so done in several cases." *Waring* v. *Waring,* 2 Phill. 132, 161 Eng. Repr. 1098. "It is not every slight violence committed against the wife by the husband, even in anger, which will authorize a divorce. Much less will slight acts of violence by a wife, from which the husband can easily protect himself, constitute cruelty entitling him to a divorce." *Huff* v. *Huff,* 73 W. Va. 330, 80 S. E. 846, 51 L. R. A. (N. S.) 282. See also 19 C. J. 47.

As to the husband's ability to protect himself and as to the reasonableness or unreasonableness of appre-

hension, if apprehension exists, of the kind above named, from future cohabitation with the wife, the trial judge had more data upon which to base a finding than have we. He saw and heard the parties and was therefore better able to "appreciate and place the proper estimate on their conduct and its effect upon each other." (See *Nogees* v. *Nogees, supra.*)

The evidence was insufficient to satisfy the trial judge, as set forth in his decision hereinabove referred to, that a case of extreme cruelty within the meaning of the statute had been made out. The record as a whole discloses no sufficient reason for a different conclusion.

The decree appealed from is affirmed.

*J. A. Matthewman* (also on the briefs) for libellant.

*O. P. Soares* (also on the brief) for libelee.